JAMES F. CORCORAN, Plaintiff, *v.* NEW YORK CENTRAL RAILROAD, Defendant.

(Supreme Court, Westchester Special Term, May, 1917.)

Nuisance — maintenance of — railroads — actions — damages — city of New York — statutes— injunctions.

> The right of one to use his own property in any way he chooses is qualified by the duty to so use it as not to injure his neighbor, and the mere fact that the use is a lawful one is no defense to the maintenance of a nuisance, nor does the fact that the use creating the injury is a proper one furnish a legal excuse unless it is expressly authorized by statute.

> The rule which grants immunity to a railroad corporation from liability for injuries caused by the conduct of its road does not apply to the maintenance of roundhouses, turn-tables, power-houses, etc., at particular places; as to such structures and their use, if injurious to adjoining owners, a railroad corporation possesses no greater rights and is subject to the same liability as a private corporation and may not locate such structures so as to injure the property of others except by express or implied legislative sanction which must be imperative and not merely permissive.

Plaintiff, fourteen years after he became the owner of certain land, separated from defendant's adjoining railroad property by a road of fifty or seventy feet wide, built a small house upon his property about seventy-five feet from said road, and seven years before that time defendant's predecessor built its round-house containing stalls for seventeen engines, but subsequently a fire occurred and there are now but twelve stalls. Defendant also maintains at the roundhouse four stationary engines and boilers and four smoke stacks which are level with the road below plaintiff's house. Prior to the fire defendant also maintained coal chutes in connection with the roundhouse but since that time the engines have been. coaled with a derrick directly from cars in front of plaintiff's property. In an action to abate an alleged nuisance and to enjoin the maintenance of the round-house and for damages, *held,* that a mere statutory (Laws of 1831, chap. 263; Laws of 1849, chap. 75) grant of power to erect and maintain the structures complained of did not authorize their construction and maintenance at such place or in such manner as to injure adjoining property.

That neither a statute eliminating steam engines in the city of New York, nor the orders of the Public Service Commission establishing a certain local service, required the maintenance of said structures at their present location. That the legislation upon which defendant relies constitutes no protection against liability and that if it is impossible to remove the roundhouse and other structures complained of to a place where they will not injure plaintiff's property the right to so injure must be acquired.

That plaintiff is entitled to recover as past damages the diminution in rental value arising from the maintenance of the nuisance for six years last past.

That plaintiff is also entitled to an injunction restraining the further operation of the roundhouse, stationary engines, etc., in such manner as to result in injury to his property unless defendant pay the plaintiff damages, in a fixed amount, for the permanent injury which his property will sustain by a continuance of the nuisance.

Action to restrain a nuisance.

H. B. Bradbury, for plaintiff.

Brennan, Curran & Bleakley, for defendant.
13

Supreme Court, May, 1917. [Vol. 100.

YOUNG, J. This action is brought to abate an alleged nuisance and to enjoin the defendant from maintaining its roundhouse and for damages. The plaintiff became the owner of a piece of land in 1894. This land is separated from the defendant's property by a road fifty or seventy feet wide. In 1908 plaintiff built a small house upon his property about seventy-five feet from the road. In 1901 the defendant's predecessor built its roundhouse near plaintiff's property which is still maintained by the defendant. This roundhouse contained originally stalls for seventeen engines, but subsequently a fire occurred and there are now but twelve stalls. The defendant also maintains at the roundhouse four stationary engines and boilers and four smoke stacks, which are level with the road below plaintiff's house. Prior to the fire the defendant also maintained coal chutes in connection with the roundhouse, but since that time the engines have been coaled with a derrick directly from the cars in front of plaintiff's property. The defendant operates cars by electricity from Grand Central Terminal in New York city to North White Plains, and maintains a commutation service between New York city and White Plains with terminal facilities located at North White Plains where is located the roundhouse in question. From North White Plains northward the trains are operated by steam.

Considerable testimony was given concerning the operation of the stationary engines and boilers, the method of kindling fires in the locomotives in the roundhouse and the smoke and soot which came from the smoke stacks of the locomotives and the stationary engines, and it seems to be substantially undisputed that the use by the defendant of its roundhouse, engines and boilers does occasion a considerable amount of smoke and soot which affects plaintiff's

property. In the operation of its engines, the defendant uses a form of soft coal which is claimed to be harder than bituminous coal and softer than anthracite. It is contended by the defendant that its roundhouse, engines and boilers are constructed and operated in the best possible manner, and that every available means was used to prevent smoke, soot, dust and cinders. It is further contended that the change required by an act of the legislature eliminating the use of steam engines in the city of New York and an order of the public service commission establishing a local service between the Grand Central Terminal and White Plains necessitated the construction of the roundhouse and its appurtenances complained of at the place in question, and that that was the only place where it could be maintained, and that the plaintiff was not entitled to restrain the use of this roundhouse by defendant because it was necessary in the usual operation of defendant's railroad and was sanctioned by legislative authority.

I have examined with considerable care the very able briefs of counsel, and it seems to me that under the authorities the sole question necessary to be determined in this case is whether the use which defendant makes of its property by maintaining this roundhouse and its appurtenances in the way that it does is by necessity maintained at that particular place and under the authority of the legislature either direct or necessarily implied.

The right of one to use his own property in any way he chooses is qualified by the duty to so use it as not to injure his neighbor. The mere fact that the use is a lawful one is no defense to the maintenance of a nuisance nor does the fact that the use creating the injury is a proper one furnish a legal excuse unless it is expressly authorized by statute. Thus it

has been held that the erection by a railroad company upon a lot adjoining plaintiff's dwelling house of an engine house and coal bins used in the operation of the road, causing smoke, soot, cinders and coal dust to fill plaintiff's house and render the air offensive and unwholesome and the house untenantable constituted a nuisance, and that the authority conferred upon the defendant by the legislature to run its trains over the railroad was not a legislative sanction to the commission of such nuisance, and that it was no defense that it was necessary for the defendant to have its engine house located where it was, or that in the management thereof it exercised all practicable care; that the statutory sanction which would justify an injury by a railroad corporation to private property without making compensation, and without the owner's consent, must be express, or given by clear and unquestionable implication from the powers expressly conferred, so that it can be said that the legislature contemplated the doing of the very act which occasioned the injury; it may not be presumed from a general grant of authority that where the terms of a statute are not imperative but permissive this does not give a license to commit a nuisance, although what is contemplated by the statute cannot be done without it. *Cogswell* v. *New York, N. H. & H. R. Co.*, 103 N. Y. 10. It was also said in that case concerning the defendant's claim to the location of its engine house by necessity at the place in question: " It may have the right, which it claims, to acquire land by purchase for the accommodation of its business, but it must secure such a location as will enable it to conduct its operation without violating the just rights of others." P. 25. This rule has also been applied to the erection and maintenance by a municipal corporation of a pumping station under an

act of the legislature granting authority therefor, but without designating the site, and it was held that it had no power either express or implied to construct it so near the lands of another as to destroy or seriously injure their rental value (*Morton* v. *City of New York,* 140 N. Y. 207); also to the occupying by a municipal corporation of half a pier in the East river with an elevated structure for the dumping of sweepings and refuse from city streets into scows under a statute authorizing the commissioner of street cleaning to procure scows and tugs for the work and requiring that certain public piers be set apart for their use (*Hill* v. *City of New York,* 139 id. 495); also to the occupation of a large portion of a city street by a railroad company with piers and abutments to support its structure under mere general legislative authority to a railroad company to cross a city street. *Delaware, L. & W. R. Co.* v. *City of Buffalo,* 158 N. Y. 266. It has also been held that the general statutory power to construct and operate a steam surface railroad does not authorize such an unreasonable construction and use of a turn-table in a terminal yard in the vicinity of an inhabited dwelling on adjoining private property as to seriously injure such premises and impair their enjoyment without compensation, and if so used it constituted a nuisance. *Garvey* v. *Long Island R. Co.,* 159 N. Y. 323. It has also been held that a municipal charter empowering the construction of sewers and their discharge into a creek is a legislative permission, not a direction, and confers no right to appropriate property without compensation, nor does it give a license to commit a nuisance. *Sammons* v. *City of Gloversville,* 175 N. Y. 346. The use of soft coal in a factory situated in a country district suitable for country homes so that thick, black smoke therefrom, great in volume and dense in quality,

envelops and discolors a neighbor's dwelling house, causing discomfort and financial loss, has been held to constitute a nuisance when such use is not necessary for the practical running of the plant. *McCarty v. Natural Carbonic Gas Co.,* 189 N. Y. 40.

In *Baltimore & Potomac R. R. Co.* v. *Fifth Baptist Church,* 108 U. S. 317, it was held that the maintenance by a railroad company of an engine house and repair shop adjoining a church edifice with the noise and disturbance created thereby, and the smoke, cinders, dust and offensive odors, constituted a nuisance and that the authority given the railroad company to operate its railroad within the city of Washington did not authorize the company to place them wherever it might think them proper in the city without reference to the rights of others. The court said: " The acts that a legislature may authorize, which, without such authorization, would constitute nuisances, are those which affect public highways or public streams or matters in which the public have an interest and over which the public have control. The legislative authorization exempts only from liability to suits, civil or criminal, at the instance of the State; it does not affect any claim of a private citizen for damages for any special inconvenience and discomfort not experienced by the public at large." P. 332.

The court in that case also held that if the annoyances complained of were only those which must necessarily arise from the nature of the business carried on and could not be prevented, then the engine house and repair shops should be removed to some other place where plaintiff would not be thus annoyed.

On the other hand, it seems to be well settled that a railroad corporation performs a public service and is not liable for injuries incidentally occasioned as a consequence of the ordinary careful operation of its

road. *Friedman* v. *New York & H. R. Co.,* 89 App.
Div. 38; affd., 180 N. Y. 550; *Bennett* v. *Long Island
R. Co.,* 181 id. 431; *Hearst* v. *New York C. & H. R.
R. Co.,* 215 id. 268. In the case last cited,
it was held that this immunity was limited to
such damages as naturally and unavoidably resulted
from the proper conduct of the road, that it
included the noises and vibrations incident to
the running of trains, the necessary emission of
smoke and sparks from the locomotives and similar
annoyances inseparable from the normal and non-
negligent operation of a railroad; but where it was
found that the acts complained of were injurious and
not necessarily or reasonably incident to the operation
of a railroad at the point in question, but could be
performed anywhere, a right to relief arises in favor
of the injured property owner.

In applying the above rule, the Court of Appeals
in that case also held that the habitual and indefinite
storing of live stock cars outside its freight yard and
near the plaintiff's residence should be enjoined; that
the use by defendant of its through tracks for the
purpose of separating and classifying cars intended
for its other yards was not reasonably incident to
the operation of the yard at the point in question;
that the railroad company, having the right, expressly
found against the plaintiff, to maintain and operate
its freight yard, was justified in any use of its tracks
at their junction with said yard which was reasonably
incidental to that lawful situation and to the proper
maintenance and use of its yard although the method
of operation involved accompanying noises; that
defendant's rules, which required outgoing engines to
be supplied with enough anthracite coal to carry them
some distance beyond the point in question and that
the fires on incoming engines should be banked above

that point and no smoke or cinders emitted, are sufficient under ordinary circumstances and that the company should be held to the observance of those regulations.

It seems to me that it may be fairly gathered from the reasoning of the above authorities that the rule which grants immunity to a railroad corporation from liability for injuries caused by the conduct of its road applies only to the ordinary operation of the railroad itself, and not to the maintenance of roundhouses, turn-tables, power-houses, etc., at particular places. As to such structures and their use, if injurious to adjoining owners, a railroad corporation possesses no greater rights and is subject to the same liability as a private corporation and may not locate them so as to injure the property of others, except by express or implied legislative sanction which must be imperative and not merely permissive.

The defendant contends that chapter 263 of the Laws of 1831, under which the New York and Harlem Railroad Company (defendant's predecessor) was organized, and by which " said corporation is hereby authorized to construct  *  *  *   and shall have power to erect and -maintain coal houses and such other buildings  *  *  *  as they .may deem suitable to their interests," and that chapter 75 of the Laws of 1849 with reference to said company, which provided " *  *  *  and also for the purpose of constructing such turnout and branch tracks, station and engine houses, and other equipment, as the exigencies of the business may demand and their charters may authorize and permit," also expressly sanctioned these acts. It further contends that the act of the legislature directing the elimination of steam engines in New York city and the order of the public service commission establish-

ing local service between Grand Central Terminal and White Plains compelled the placing of its terminal with the roundhouse and other structures complained of at North White Plains and their maintenance at the place in question.

It does not seem to me, however, that the acts of 1831 and 1849 referred to give any greater authority to the defendant than that usually and generally conferred upon railroad corporations by general law. Undoubtedly the maintenance of roundhouses, engine houses, power-houses and like structures somewhere are a necessity to the proper operation of a railroad, and without express language in the statute authorizing their construction such power would be implied as an incident to the general grant, but, as has been pointed out by the above authorities, the mere grant of power to erect and maintain these structures does not authorize their construction and maintenance at such place or in such manner as to injure adjoining landowners. Neither do I think that the act of the legislature eliminating steam engines in New York city, nor the orders of the public service commission above mentioned, require the maintenance of these structures at their present location, nor is there sufficient evidence of the necessity of such location. But if it be assumed that the various acts of the legislature amount to an imperative direction as to such location and the necessity thereof the defendant must nevertheless be held liable.

In *Richards* v. *Washington Terminal Co.,* 233 U. S. 546, plaintiff was the owner of a lot near the portal of a tunnel in the District of Columbia constructed under the authority of congress. This lot did not immediately adjoin the portal of the tunnel, there being three houses intervening. This tunnel was used in the operation of a railroad and the smoke and gases

from the engines were forced out of the south portal of the tunnel near plaintiff's property by a fanning system installed by defendant. The court held that the plaintiff could not recover for damages caused by the usual gases and smoke emitted from the tunnel by the public operation of the railroad, but that with respect to the damage attributable to the gases and smoke emitted by locomotives in the tunnel and forced out by means of the fanning system through the portal located so near plaintiff's property as to materially contribute to any injury there was a right of recovery.

The court also said that the acts of congress and the construction of the tunnel thereunder legalized the construction and operation of the railroad so that while properly conducted and erected it could not be deemed a public nuisance; that there was no appropriation of plaintiff's land and that the act of congress did not provide in terms for the payment of compensation to property owners injured except those whose lands were appropriated, but that the act did authorize the terminal company to acquire by purchase or condemnation " the lands and property necessary for all and every the purposes contemplated." The court further said that this legislation must be construed in the light of the Fifth Amendment of the Constitution " nor shall property be taken for public use, without just compensation," and said: " We deem the true rule, under the Fifth Amendment as under state constitutions containing a similar prohibition, to be that while the legislature may legalize what otherwise would be a public nuisance, it may not confer immunity from action for a private nuisance of such a character as to amount in effect to a taking of private property for public use." P. 553.

In commenting upon the case of *Baltimore, etc., R.*

*Co.* v. *Fifth Baptist Church, supra,* the court said: " This case differs from that of the Baptist Church, in that there the railroad company was free to select some other location for the repair shop and engine house; while here the evidence shows that the location of the tunnel and its south portal was established pursuant to law, and not voluntarily chosen by defendant. This circumstance, however, does not, as we think, afford sufficient ground for a distinction affecting the result. The case shows that Congress has authorized, and in effect commanded, defendant to construct its terminal with a portal located in the midst of an inhabited portion of the city. The authority no doubt includes the use of steam locomotive engines in the tunnel, with the inevitable concomitants of foul gases and smoke emitted from the engines. No question is made but that it includes the installation and operation of a fanning system for ridding the tunnel of this source of discomfort to those operating the trains and traveling upon them. All this being granted, the special and peculiar damage to the plaintiff as a property owner in close proximity to the portal is the necessary consequence, unless at least it be feasible to install ventilating shafts or other devices for preventing the outpouring of gases and smoke from the entire length of the tunnel at a single point upon the surface, as at present. Construing the acts of Congress in the light of the Fifth Amendment, they do not authorize the imposition of so direct and peculiar and substantial a burden upon plaintiff's property without compensation to him. If the damage is not preventable by the employment at reasonable expense of devices such as have been suggested, then plaintiff's property is ' necessary for the purposes contemplated ' and may be acquired by purchase or condemnation (32 Stat.

909, 916, chap. 856, § 9), and pending its acquisition defendant is responsible. If the damage is readily preventible, the statute furnishes no excuse, and defendant's responsibility follows on general principles." Pp. 556, 557.

It seems to me therefore that under the doctrine laid down in the case last cited the legislation upon which the defendant relies constitutes no protection against liability, and that, if it is impossible for the defendant to remove its roundhouse and other structures complained of to a place where they will not injure plaintiff's property, the right to so injure must be acquired. The only question which remains is the amount of damages to which plaintiff is entitled.

After carefully considering the evidence upon this subject, I conclude that plaintiff is entitled to recover, as past damages, the diminution in rental value arising from the maintenance of the nuisance for six years, which I fix at $360. The plaintiff is also entitled to an injunction restraining the further operation of the roundhouse, stationary engines, etc., in such manner as to result in injury to his property, unless the defendant pay to the plaintiff the permanent injury which his property will sustain by a continuance of the nuisance, and these permanent damages I fix at $500.

A decision and judgment in conformity with this opinion may be settled on notice.

Judgment accordingly.