ANNIE LEVINE, as Administratrix, etc., of ISAAC LEVINE, Deceased, Respondent, *v.* NEW YORK RAILWAYS COMPANY, Appellant.

First Department, April 5, 1918.

Appeal — when judgment in action submitted to jury upon both issue of negligence and of nuisance will not be affirmed — street railroads — nuisance — clearance between cars — defense to claim of nuisance.

Where a case for personal injuries has been submitted to the jury upon both the issue of negligence and of nuisance, a judgment in favor of the plaintiff cannot be affirmed on appeal unless the evidence warranted a finding in her favor on both issues.

A street railway company's implied license to use a car of greater width so as to leave a clearance on passing of only nine and one-half inches is not a complete answer to the claim of nuisance, for where one relies upon authority for a given construction claimed to be a nuisance, it must be established that it was properly made in pursuance of such authority. And if in a situation claimed to constitute a nuisance the danger or inconvenience or injury caused is so needless as to be unreasonable or is due to negligence, the authority granted, unless express, is no answer to the claim of nuisance.

A street railway company, in order to safeguard the traveling public and to minimize accidents, adopted a new type of cars one inch wider than the type which had been in use for many years, which were constructed under the supervision of the Public Service Commission, but without any order and were operated with knowledge of said Commission, although

the clearance on passing of such cars was only nine and one-half inches. The roadway on one side of the car tracks is about fourteen feet and eight inches wide and on the other side about sixteen feet and five inches wide, and the space between the tracks is four feet four inches wide. This location of the tracks has long been maintained on the street in question, although in some other sections of the city the distance between the tracks is greater. A pedestrian was caught between the sides of two of defendant's cars as they passed one another in opposite directions and was crushed to death. In an action against the railway company, *held*, that the use of the improved cars of greater width was not, under the circumstances, needless and did not constitute a nuisance, and that the case should have rested upon the claim of negligence.

DOWLING, J., dissented.

APPEAL by the defendant, New York Railways Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 27th day of February, 1917, upon the verdict of a jury for $20,000, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*Francis L. Wellman* of counsel [*B. H. Ames, Frederick Allis, Albert L. Wilbur* and *William D. Van Pelt* with him on the brief; *James L. Quackenbush*, attorney], for the appellant.

*John C. Robinson* of counsel [*Gilbert J. Steiner* with him on the brief], for the respondent.

SHEARN, J.:

While crossing Broadway from west to east in the middle of the block between Broome and Spring streets, the decedent, a man forty-three years of age, was caught between the sides of two of defendant's cars as they passed one another in opposite directions and was crushed to death. The complaint alleged that the cars were negligently operated and also that the defendant had created and maintained a public nuisance at the place in question because the cars were so wide that the space between them when they were passing each other in opposite directions was insufficient to enable persons on the street to stand safely in said space, the situation being imminently dangerous to persons lawfully upon the street. Although the evidence amply warranted a finding of negligence

First Department, April, 1918.          [Vol. 182.

in the operation of the cars, the learned trial justice, upon the insistence of plaintiff's counsel, submitted the case to the jury upon both the issue of negligence and the issue of nuisance. Therefore, the judgment cannot stand unless the evidence warranted a finding in favor of the plaintiff on the issue of nuisance. The court's charge permitted the jury to find that the defendant had created and maintained a public nuisance solely for the reason that the clearance between the two cars in passing at the point of the accident was nine and one-half inches, so that a person on the highway at that point who was caught between two such passing cars was exposed to imminent danger of death.

The facts relating to the issue of nuisance are substantially undisputed. The roadway of Broadway west of the car tracks is about fourteen feet eight inches wide, and the roadway east of the car tracks is about sixteen feet five inches wide. At the place of the accident the space between the north and south-bound car tracks is four feet four inches wide. This location of the tracks, both actual and relative, has long been maintained. In some other sections of the city the distance between the inner rails of the north and south-bound tracks is greater than in the block between Broome and Spring streets. This is true of the tracks on Third avenue, and on Broadway above Thirty-fourth street the width is greater by one foot. With narrow cars of the old type, which were seven feet eleven inches wide, the space between passing cars at this point would be thirteen and one-half inches. In the case of the long open cars, a type familiar for many years, their width being eight feet two inches, the space between two of such passing cars at this point would be ten and one-half inches. The type of cars concerned in this accident, known as the stepless or " hobble " cars, were one inch wider than the long open cars, *i. e.*, eight feet three inches wide, giving a clearance, as above stated, of nine and one-half inches. It is a matter of common knowledge, and a fact familiar in the courts, that the most common causes of street car accidents have been boarding and alighting from cars in motion and the starting of cars while passengers are in the act of boarding. With the invention of the stepless car, necessarily all of such accidents have

been eliminated. It appears that more than one year ago, in order to safeguard the traveling public and to minimize accidents, the defendant, in common with other surface railroad companies in New York city, adopted and put into extensive use these stepless cars. The Public Service Commissions Law (Consol. Laws, chap. 48 [Laws of 1910, chap. 480], § 49, subd. 2) authorizes the Commission to determine whether the equipment and appliances of a street railroad corporation are unsafe or improper, and section 50 authorizes the Commission to require to be made such repairs or improvements to or changes in the equipment and facilities of such corporations and authorizes the railroad corporations to make all improvements and changes required by any order of the Commission. In the case of the adoption of these improved cars, it does not appear that any order of the Commission was made, but it was testified that an engineer of the Public Service Commission supervised in part the construction of this type of car. Section 91 of the former Railroad Law (Gen. Laws, chap. 39 [Laws of 1890, chap. 565], as amd. by Laws of 1901, chap. 638; Laws of 1903, chap. 537; Laws of 1905, chap. 650, and Laws of 1907, chap. 156), which is now section 171 of the present Railroad Law (Consol. Laws, chap. 49; Laws of 1910, chap. 481), provides: " Whenever heretofore or hereafter a railroad has been or shall be constructed and put in operation for one year or the motive power thereon (thereof) has been or shall be changed and put in operation for a similar length of time, such facts shall be presumptive evidence that the requisite consents of local authorities, property owners and other authority to the construction, maintenance and operation of such railroad or change of motive power have been duly obtained."

Notwithstanding that this type of car was adopted for the purpose of, and was calculated to, promote the safety of the traveling public, that they are only one inch wider than the type in use for many years, that they were constructed under the eye of the Public Service Commission, and that they have been operated for more than a year in the situation complained of, not only with the full knowledge of the Commission especially charged with the duty and authority of protecting the public safety but with the full knowledge of all other public officials, both municipal and State, their use in lower

Broadway has been held to constitute a public nuisance. If this finding is sound, the railroad officials who are responsible for the use of this safety type of car are guilty of a crime and the Public Service Commission is guilty of neglect of duty. If the use of these cars constitutes a public nuisance, such a nuisance must be abated even though it involves the enormous expense and great public inconvenience entailed by discarding all of these cars or relocating several miles of tracks in the city streets. These consequences do not affect the determination of the question of nuisance, but they bid one pause in reaching such a conclusion unless it is clearly justified.

That the situation created by operating in the crowded and busy streets of the city cars having a clearance on passing of only nine and one-half inches is very dangerous must be admitted. It was dangerous during the generation or more when there was a clearance of thirteen and one-half inches between the old style cars, and that danger was increased by the introduction of the long open cars, with a clearance of ten and one-half inches, and has been still further increased by the use of the stepless cars, which not only have a clearance of but nine and one-half inches but are so shaped, with their narrowing ends, as to mislead the inattentive into thinking that there is more room between the cars than is actually the fact. I am also of the opinion that the defendant's implied license to use this type of car is not a complete answer to the claim of nuisance, for where one relies upon authority for a given construction claimed to be a nuisance, it must be established that it " was properly made in pursuance of [such] authority." (*Brown* v. *Metropolitan Street R. Co.*, 60 App. Div. 184, 186; *Clifford* v. *Dam*, 81 N. Y. 52; *Lambert* v. *Westchester Elec. R. R. Co.*, 191 id. 248, 252; *Schild* v. *C. P., N. & E. R. R. R. Co.*, 133 id. 446, 449.) And if, in a situation claimed to constitute a nuisance, the danger or inconvenience or injury caused is so needless as to be unreasonable, or is due to negligence, the authority granted, unless express, is no answer to the claim of nuisance. (*Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 N. Y. 10; *Richards* v. *Washington Terminal Co.*, 233 U. S. 546; *Corcoran* v. *New York Central Railroad*, 100 Misc. Rep. 192.)

The question then arises whether the provision of a clearance of only nine and one-half inches between passing cars is needless. Obviously, there are only two ways of getting a greater clearance. One is by lessening the width of the cars and the other by relocating the tracks. The testimony is undisputed that these stepless cars are of the latest and best standard type; that their width is the same as those used on Third avenue and in Forty-second street; and, as testified to by an assistant engineer of car equipment in the defendant's employment, who had been in that department twelve years: " Q. Do you know as matter of fact that eight feet three inches is the standard width of the center aisle cars everywhere? A. As far as I know it is the minimum overall width that they possibly can have in order to have a cross seat and give passengers comfort of free movement; that is, space enough to walk through the aisle, as well as enough sitting space, two passengers to a seat." In the face of this testimony, and the tacit approval of these cars by the Public Service Commission, it would be absurd and unwarranted, it seems to me, for a court to say that in its judgment this type of car might be several inches narrower. At any rate, on this record, the width of eight feet three inches is not needless or unreasonable. So far as concerns the relocation of the tracks, so as to place them nearer the curb, the right to do this is at least doubtful. Under the decision of the Court of Appeals in *People ex rel. City of New York* v. *New York Railways Co.* (217 N. Y. 310, 313) while the State could, in the exercise of police power, require the relocation of tracks in the city, the city could not. Neither could the railroad relocate its tracks without the consent of the city. It is extremely doubtful whether such a consent could be obtained, for the tremendous pressure of vehicular traffic is such that the authorities might well hesitate long, before still further cutting off the vehicular space between the tracks and the curb merely for the better protection of the comparatively small number of those crossing the street who are apt to get caught between passing cars. In the absence of any such consent by the city, it would be going pretty far to hold that the present location of the tracks is needless.

In considering this whole situation, a broad view of the

matter should be taken, having in mind the greatest good for the greatest number. As was said by the Supreme Court of the United States in *Miller* v. *Mayor of New York* (109 U. S. 385, 395, 398), dealing with the construction of the East River bridge: "Every public improvement, whilst adding to the convenience of the people at large, affects more or less injuriously the interests of some. * * * In this case that government [meaning the Federal government] does not object, but approves and sanctions the structure, and the public benefit from it far outweighs any inconvenience arising from its interference with the navigation of the stream." Here was the railroad company dealing with a problem of the safety of the traveling public; it was confronted by an appalling record of accidents, constantly increasing; it was offered a way of minimizing these accidents and safeguarding the public by investing a large sum of money in these modern stepless cars, standard in design and approved by the Public Service Commission; it could only relocate its tracks with the consent of the city; any material reduction in space between the car tracks and the curb imposed greater danger to the constantly increasing vehicular traffic. Whether it was wiser to seek the consent to cut down the distance between the tracks and the curb, with its increased peril to vehicular traffic, or to leave the tracks as they were and abandon the idea of an isle of safety between passing cars, relying on its operatives not to pass a pedestrian standing between the tracks, was a matter of judgment. I am not aware of any case where a nuisance has been predicated upon an error of judgment. Considering all of the elements of the situation, it seems to me that it would be most unreasonable to condemn the use of these safety cars as a public nuisance.

The respondent relies strongly upon *Stern* v. *International Railway Co.* (220 N. Y. 284) dealing with the location of trolley poles in the middle of the street, in the space between the double railroad tracks, without the protection of curbstones or other guards, where it was held that the question of nuisance was for the jury. The court said: "The question is not whether some other place is better. The question is whether the place chosen is so dangerous and the danger so

needless that the choice becomes unreasonable." That is the point of view from which we have approached the consideration of the instant case. Further, there are many essential differences in the underlying facts of the two cases. The trolley poles were obstructions placed in the surface of the street. Such an interference with freedom of travel over a street might well be viewed differently from that of the mere operation of a standard style of car over tracks located in the street by both legislative authority and municipal consent. The placing of the poles in the middle of the street was absolutely unlicensed and the proof showed clearly that it was not only dangerous but absolutely needless.

In the case of *Brown* v. *Metropolitan Street R. Co.* (60 App. Div. 184) the case also involved, as did the *Stern* case, an interference with the surface of the street. At the point of the accident, where a bicycle dropped through a cable slot, the slot was suddenly widened to a width of two inches. There was thus created a dangerous, unguarded hole in the surface of the street, for the creation and maintenance of which the defendant was clearly liable, as the evidence showed that it was wholly unnecessary. The cases of *McNulty* v. *Ludwig & Co.* (153 App. Div. 206) and *City of New York* v. *Knickerbocker Trust Co.* (104 id. 223) are not in point except in the mere matter of definition.

In our judgment, the case should have rested upon the claim of negligence, and there was no sufficient warrant for submitting to the jury the issue of nuisance.

The judgment and order should be reversed and a new trial ordered, with costs to appellant to abide the event.

CLARKE, P. J., LAUGHLIN and SMITH, JJ., concurred; DOWLING, J., dissented.

DOWLING, J. (dissenting):

I believe that the trial court properly submitted to the jury the question of whether, at the point in question, the conditions maintained by defendant in the operation of its cars were such as to constitute a nuisance. The fact that the use of these " hobble cars " has reduced the number of accidents in the city in general does not justify their operation on tracks laid so closely together that death is bound to

ensue to any one caught between two such cars going in opposite directions. The varying distance between defendant's tracks in different parts of the city is itself confusing to the public. There are localities where a person may stand in safety between the tracks and not be in danger when between passing cars of the type in question. There are other places where no provision has been made for relocating tracks so as to obviate the new danger caused by the use of the wider cars. With the cars formerly used, there was space for a pedestrian to stand in safety between the tracks, and the record shows that it was a matter of frequent occurrence for policemen on duty to so stand without either danger or injury from cars passing simultaneously on either side of them. That people using the streets of the city are in constant danger of being caught between moving cars, where the traffic is so steady and frequent, must be apparent. The defendant knew of the danger, for the instructors of its motormen warned them thereof in their training for their work and told them there was not sufficient space between tracks for a man to stand in safety nor to justify them in passing a man so standing. The way in which the body of the deceased, who was of ordinary size, was wedged between the two cars, shows what a death-trap the defendant maintained at the locality in question. I do not think that the fact that the defendant was tacitly allowed to use the cars of the " hobble " type was a permit to use them under any and all conditions, or that it was intended to allow it to create traps at one section in order to diminish danger elsewhere. There is no contention that the tracks could not have been relocated at the dangerous points, so as to lessen the danger, or that there would not be sufficient space on either side of the tracks, thus relocated, to accommodate the vehicular traffic. It must be noted, as well, that the very shape of the cars diminishes the apparent, and increases the real, danger, for they are wedge-shaped and there is visible a seemingly safe distance between the points of approaching cars which is reduced by two feet when the centers are opposite each other. In *Brown* v. *Metropolitan Street R. Co.* (60 App. Div. 184; affd., 171 N. Y. 699) the defendant was held liable for the maintenance of a nuisance because at one part of its tracks the slot between the same

was from one and one-half to two inches wide, instead of the usual width elsewhere of from five-eighths to three-fourths of an inch. Plaintiff therein, a bicycle rider, who was injured by being thrown from his wheel because of the difference in width of the slot, was allowed to recover his damages. In *Stern* v. *International Railway Co.* (220 N. Y. 284) defendant was held liable for the maintenance of a nuisance because of the needlessly dangerous location of its trolley poles, which were in the center of the street, between double tracks, without protection. As the court said (p. 293): "Plainly, there was at least some risk of accident; plainly, the risk was needless, whatever its degree; plainly, therefore, the inference of fault may be drawn unless the risk was so remote or trifling that reasonable men in the exercise of reasonable care would not have striven to avoid it. In the light of all the circumstances we think that question was for the jury." In that case the court took into consideration changed conditions in traffic and methods, at the place in question, as well as elsewhere in the same city. As Judge CARDOZO said (p. 296), quoting from *People ex rel. City of New York* v. *New York Railways Co.* (217 N. Y. 310): "The rights of a railroad corporation upon the parts of the streets appropriated to its use must be so exercised that the free use of the streets, for the purposes and in the modes inherent in their creation, will not be unreasonably interfered with." Moreover, if defendant had the right to so operate its cars as to leave no space for pedestrians between tracks, decedent had no right to assume that he was in safety when standing between the tracks, and was guilty of contributory negligence as a matter of law in taking such a position. If defendant cannot be held for the maintenance of a nuisance under the conditions proven here, I do not see how the action for negligence can be maintained, because of decedent's contributory negligence.

I favor the affirmance of the judgment appealed from, with costs.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.