## RICHARDS *v.* WASHINGTON TERMINAL COMPANY.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 52. Argued November 7, 1913.—Decided May 4, 1914.

Although in England, Parliament, being omnipotent, may authorize the taking of private property for public use without compensation, the English courts decline to place an unjust construction on its acts, and, unless so clear as not to admit any other meaning, do not interpret them as interfering with rights of private property.

Legislation of Congress is different from that of Parliament as it must be construed in the light of that provision of the Fifth Amendment which forbids the taking of private property for public use without compensation.

While Congress may legalize, within the sphere of its jurisdiction, what otherwise would be a public nuisance, it may not confer immunity from action for a private nuisance of such a character as to amount in effect to a taking of private property for public use.

While the owners of a railroad constructed and operated for the public use, although with private property for private gain, are not, in the absence of negligence, subject to action in behalf of owners of neighboring private property for the ordinary damages attributable to the operation of the railroad, a property owner may be entitled to compensation for such special damages as devolve exclusively upon his property and not equally upon all the neighboring property.

In this case, *held* that an owner of property near the portal of a tunnel in the District of Columbia constructed under authority of Congress, while not entitled to compensation for damages caused by the usual gases and smoke emitted from the tunnel by reason of the proper operation of the railroad is entitled to compensation for such direct, peculiar and substantial damages as specially affect his property and diminish its value.

37 App. D. C. 289, reversed.

THE facts, which involve the right, under the Fifth Amendment, of an owner to be compensated for special and peculiar damages to his property by reason of the operation of a railroad near the premises, are stated in the opinion.

*Mr. Hugh H. Obear,* with whom *Mr. Charles A. Douglas, Mr. Thomas Ruffin, Mr. Edw. F. Colladay, Mr. Paul Sleman* and *Mr. Harry F. Lerch* were on the brief, for plaintiff in error.

*Mr. John W. Yerkes,* with whom *Mr. George E. Hamilton* and *Mr. John J. Hamilton* were on the brief, for defendant in error:

The Congress, in legislation directing the acquisition of the right of way for this railroad construction, provided only for payment of compensation to those whose land was actually appropriated, and made no provision for recovery of damages by those who suffered injury through the proper construction and operation of the road.

Where compensation for incidental and consequential injuries to property is allowed, it follows from constitutional provisions or direct legislation and in the absence thereof there can be no recovery.

There has been no such taking of the property of plaintiff in error by defendant in error as requires or justifies the making of compensation.

In support of these contentions, see *Atchison, Topeka & Santa Fe R. R. Co.* v. *Armstrong,* 1 L. R. A., N. S., 113; *Bedford* v. *United States,* 192 U. S. 217; *Beseman* v. *P. R. R. Co.,* 50 N. J. L. 235; *Boothby* v. *Androscoggin R. R. Co.,* 51 Maine, 318; *Briesen* v. *Long Island R. R. Co.,* 31 Hun, 112; *Chicago* v. *Taylor,* 125 U. S. 161; *Dunsmore* v. *Central Iowa Ry. Co.,* 72 Iowa, 182; *Friedman* v. *N. Y. & H. R. R. Co.,* 85 N. Y. Supp. 404; *Gainesville H. & W. R. R. Co.* v. *Hall,* 78 Texas, 169; *Gibson* v. *United States,* 166 U. S. 269; *Hatch* v. *Ver. Cent. R. R. Co.,* 25 Vermont, 49; *High Bridge Lumber Co.* v. *United States,* 69 Fed. Rep. 320; *Kansas, N. & D. Ry. Co.* v. *Cuykendall,* 42 Kansas, 234; *Marchant* v. *P. R. R. Co.,* 153 U. S. 380; *Millard* v. *Roberts,* 25 App. D. C. 225; *Northern Trans. Co.* v. *Chicago,* 99 U. S. 635; *Penna. R. R. Co.* v. *Miller,* 132 U. S. 75; *Pum-*

pelly v. *Green Bay Co.*, 13 Wall. 166; *Richards* v. *Wash. Terminal Co.*, 37 App. D. C. 289; *Spencer* v. *R. R. Co.*, 23 W. Va. 427; *Taylor* v. *B. & O. R. R. Co.*, 33 W. Va. 39; *Church of Latter-day Saints* v. *Oregon Short Line R. R. Co.*, 23 L. R. A., N. S., 860; *United States* v. *Alexander*, 148 U. S. 186; *United States* v. *Grizzard*, 219 U. S. 180; *United States* v. *Lynah*, 188 U. S. 445. *Fifth Baptist Church Case*, 108 U. S. 317, distinguished.

MR. JUSTICE PITNEY delivered the opinion of the court.

Plaintiff in error, who was plaintiff below, commenced this action in the Supreme Court of the District of Columbia to recover for the damage to his property resulting from the maintenance of an alleged nuisance by defendant by means of the operation of a railroad and tunnel upon its own lands near to but not adjoining those of plaintiff. Defendant having pleaded not guilty, the issue came on for trial by jury, and at the conclusion of plaintiff's evidence a verdict was directed in favor of defendant. The Court of Appeals affirmed the judgment (37 App. D. C. 289), and a writ of error brings the controversy under the review of this court.

An agreed abridgment of the evidence upon which the ruling of the trial justice was based is embodied in the bill of exceptions. From this it appears that plaintiff is and has been since the year 1901 the owner of Lot 34 in Square 693 in the City of Washington, having a frontage of 20 ft. upon the westerly side of New Jersey Avenue, Southeast, and an average depth of 81 ft., with improvements thereon consisting of a three-story and basement brick dwelling-house containing ten rooms, known as No. 415 New Jersey Avenue. The rear windows upon all the floors of the house open in the direction of the railroad tracks that lead from defendant's tunnel. The south portal of this tunnel opens within Square 693 and near its

northeasterly corner, and the tunnel extends thence in a northeasterly direction passing under the Capitol and Library grounds and First Street N. E., to the Union Station at Massachusetts Avenue. There are two sets of railroad tracks in the tunnel and leading from it, and as these emerge from the south portal they extend in a general southwesterly direction up an incline or grade across the central portion of Square 693 on to an elevated structure which carries the tracks over and beyond South Capitol Street. The tunnel and these tracks are used for the passage of trains running both northwardly and southwardly, about thirty each day, all of them being passenger trains with the exception of an occasional shifting engine. The trains frequently pass in and out of the tunnel without stopping, but trains also very often stop at or near a switch tower that is situate near the centre of Square 693. From the nearest portion of plaintiff's house to the centre of the south portal, the distance in a straight line is about 114 ft., there being three intervening dwelling houses, two of which have been purchased and are now owned by defendant. From the rear end of plaintiff's lot to the middle of the tracks southwestwardly from the portal the distance in a straight line is about 90 ft. Plaintiff's property has been damaged by the volumes of dense black or gray smoke, and also by dust and dirt, cinders and gases, emitted from the trains while passing over the tracks and in or out of the tunnel or standing upon the tracks near the signal tower. There is a fanning system installed in the tunnel which causes the gases and smoke emitted from engines while in the tunnel to be forced out of the south portal, and these gases and smoke contaminate the air, and also add to the inconvenience suffered by plaintiff in the occupation of his property. His house was pleasant and comfortable for purposes of occupation before the construction of the tunnel and tracks, but since then it has not only depreciated in value, but the tenant

removed therefrom, and plaintiff was obliged to occupy the house himself by reason of his inability to rent it. The property has depreciated from a value of about $5,500 to about $4,000, and the rental value from $30 per month to $20 per month. The furniture and other belongings in the house have been depreciated from a value of $1,200 to $600, all of which depreciation is due to the presence of smoke, cinders, and gases emitted from passing trains and from the mouth of the tunnel, which smoke, cinders, and gases enter the dwelling house and settle upon the furniture and other personal property contained in it, contaminating the air and rendering the house objectionable as a habitation. The house has also been damaged by vibrations caused by the movement of trains on the track or in the tunnel, resulting in cracking the walls and wall paper, breaking glass in the windows, and disturbing the peace and slumber of the occupants.

The defendant, the Washington Terminal Company, is the owner of the tunnel and of the tracks therein, but its ownership of tracks ceases at the south portal. The tracks extending therefrom in a southwesterly direction are owned and used by other railroad companies, but the movement of the trains is controlled by defendant.

The tunnel and the tracks leading from it across Square 693 were located and constructed and are now maintained under the authority of acts of Congress of February 12, 1901, c. 354, 31 Stat. 774, and February 28, 1903, c. 856, 32 Stat. 909, in accordance with plans and specifications approved by those acts. No claim is made by plaintiff that the tunnel, the tracks in Square 693, and the trains operated therein and thereon, were constructed, operated, or maintained in a negligent manner; and it is conceded that the tunnel and tracks were built upon property acquired by purchase or condemnation proceedings, and were constructed under authority of the acts of Congress

and of permits issued by the Commissioners of the District of Columbia.

Such being the essential facts to be deduced from the evidence, we have reached the conclusion, for reasons presently to be stated, that with respect to most of the elements of damage to which the plaintiff's property has been subjected, the courts below correctly held them to be *damnum absque injuria;* but that with respect to such damage as is attributable to the gases and smoke emitted from locomotive engines while in the tunnel, and forced out of it by means of the fanning system through a portal located so near to plaintiff's property that these gases and smoke materially contribute to injure the furniture and to render the house less habitable than otherwise it would be, there is a right of recovery.

The acts of Congress referred to, followed by the construction of the tunnel and railroad tracks substantially in the mode prescribed, had the effect of legalizing the construction and operation of the railroad, so that its operation, while properly conducted and regulated, cannot be deemed to be a public nuisance. Yet it is sufficiently obvious that the acts done by defendant, if done without legislative sanction, would form the subject of an action by plaintiff to recover damages as for a private nuisance.

At the same time, there is no exclusive and permanent appropriation of any portion of plaintiff's land, which indeed does not even abut upon defendant's property. The acts of Congress do not in terms provide for the payment of compensation to property owners damnified through the construction and operation of the tunnel and railroad lines in question, except to those whose lands, or a portion thereof, were necessarily appropriated. For damages, whether direct or consequential, to non-contiguous parcels such as that of plaintiff, there is no express provision. But § 9 of the act of 1903 (32 Stat. p. 916) authorizes the Terminal Company to acquire, by purchase or condemna-

tion, "the lands and property necessary for all and every the purposes contemplated" by the several acts of Congress under which the tunnel and railroad were constructed and are operated. This grant of the power of condemnation is very broad, but it has not been acted upon by the company in the case of the present plaintiff. And since he is not wholly excluded from the use and enjoyment of his property, there has been no "taking" of the land in the ordinary sense.

The courts of England, in a series of decisions, have dealt with the general subject now under consideration. *Rex* v. *Pease*, 4 Barn. & Ad. 30, 40; *Vaughan* v. *Taff Vale Ry. Co.*, 5 Hurl. & Nor. 679; 29 L. J. Exch. 247; 1 Eng. Rul. Cas. 296; *Jones* v. *Festiniog Ry. Co.*, L. R., 3 Q. B. 733; *Hammersmith &c. Ry. Co.* v. *Brand*, L. R., 4 H. L. 171; 38 L. J. Q. B. 265; 1 Eng. Rul. Cas. 623; *Metropolitan Asylum District* v. *Hill*, L. R. 6 App. Cas. 193, 201, 203; *London & Brighton Ry. Co.* v. *Truman*, L. R. 11 App. Cas. 45. The rule to be deduced from these cases is that while no action will lie for an invasion of private rights necessarily resulting from the establishment and operation or railways and other public works under the express sanction of an act of Parliament, yet that such acts are to be strictly construed so as not to impair private rights unless the legislative purpose to do so appears by express words or necessary implication. In short, Parliament, being omnipotent, may authorize the taking of private property for public use without compensation to the owner; but the courts decline to place an unjust construction upon its acts, and will not interpret them as interfering with rights of private property, unless the language be so clear as to admit of no other meaning.

But the legislation we are dealing with must be construed in the light of the provision of the Fifth Amendment—"Nor shall private property be taken for public use, without just compensation"—and is not to be given

an effect inconsistent with its letter or spirit.  The doctrine of the English cases has been generally accepted by the courts of this country, sometimes with scant regard for distinctions growing out of the constitutional restrictions upon legislative action under our system.  Thus, it has been said that "A railroad authorized by law and lawfully operated cannot be deemed a private nuisance"; that "What the legislature has authorized to be done cannot be deemed unlawful," etc.  These and similar expressions have at times been indiscriminately employed with respect to public and to private nuisances.  We deem the true rule, under the Fifth Amendment, as under state constitutions containing a similar prohibition, to be that while the legislature may legalize what otherwise would be a public nuisance, it may not confer immunity from action for a private nuisance of such a character as to amount in effect to a taking of private property for public use.  *Pennsylvania R. R. Co.* v. *Angel,* 41 N. J. Eq. 316, 329; *Costigan* v. *Pennsylvania R. R. Co.,* 54 N. J. L. 233; *Cogswell* v. *N. Y., N. H. & H. R. R.,* 103 N. Y. 10; *Garvey* v. *Long Island R. R. Co.,* 159 N. Y. 323; *Bohan* v. *Port Jervis Gas Light Co.,* 122 N. Y. 18, 29; *Sadlier* v. *City of New York,* 81 N. Y. S. 308.

But the question remains, in cases of the class now before us, What is to be deemed a private nuisance such as amounts to a taking of property?  And by a great and preponderant weight of judicial authority, in those States whose constitutions contain a prohibition of the taking of private property for public use without compensation, substantially in the form employed in the Fifth Amendment, it has become established that railroads constructed and operated for the public use, although with private capital and for private gain, are not subject to actions in behalf of neighboring property owners for the ordinary damages attributable to the operation of the railroad, in the absence of negligence.  Such roads are treated as

public highways, and the proprietors as public servants, with the exemption normally enjoyed by such servants from liability to private suit, so far as concerns the incidental damages accruing to owners of non-adjacent land through the proper and skillful management and operation of the railways. Any diminution of the value of property not directly invaded nor peculiarly affected, but sharing in the common burden of incidental damages arising from the legalized nuisance, is held not to be a "taking" within the constitutional provision. The immunity is limited to such damages as naturally and unavoidably result from the proper conduct of the road and are shared generally by property owners whose lands lie within range of the inconveniences necessarily incident to proximity to a railroad. It includes the noises and vibrations incident to the running of trains, the necessary emission of smoke and sparks from the locomotives, and similar annoyances inseparable from the normal and non-negligent operation of a railroad. *Transportation Co.* v. *Chicago*, 99 U. S. 635, 641; *Beseman* v. *Pennsylvania R. R. Co.*, 50 N. J. L. 235, 240; affirmed 52 N. J. L. 221.

That the constitutional inhibition against the taking of private property for public use without compensation does not confer a right to compensation upon a land owner, no part of whose property has been actually appropriated, and who has sustained only those consequential damages that are necessarily incident to proximity to the railroad, has been so generally recognized that in some of the States (Arkansas, California, Colorado, Georgia, Illinois, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, South Dakota, Texas, West Virginia, and Wyoming are, we believe, among the number) constitutions have been established providing in substance that private property shall not be taken *or damaged*, for public use without compensation.

The immunity from liability for incidental injuries is

attended with a considerable degree of hardship to the private land owner, and has not been adopted without some judicial protest.  But, as pointed out by Chief Justice Beasley in the *Beseman Case*, 50 N. J. Law at p. 238, if railroad companies were liable to suit for such damages upon the theory that with respect to them the company is a tortfeasor, the practical result would be to bring the operation of railroads to a standstill.  And, on the whole, the doctrine has become so well established that it amounts to a rule of property, and should be modified, if at all, only by the law-making power.

· But the doctrine, being founded upon necessity, is limited accordingly.  This court, in a leading case that we deem controlling upon the questions now at issue, had occasion to recognize this, and at the same time to apply the distinction between public and private nuisances with respect to the private right of action.  In *Baltimore & Potomac R. R. Co.* v. *Fifth Baptist Church*, 108 U. S. 317, the court, while recognizing (p. 331) that the legislative authority for operating a railway carried with it an immunity to private action based upon those incidental inconveniences that are unavoidably attendant upon the operation of a railroad, nevertheless sustained the right of action in a case where a building for housing and repairing locomotive engines was unnecessarily established in close proximity to a place of public worship and so used that the noises of the shop and the rumbling of the locomotive engines passing in and out, the blowing off of steam, ·the ringing of bells, the sound of whistles, and the smoke from the chimneys, created a constant disturbance of the religious exercises.  The court (speaking by Mr. Justice Field) held that the authority of the company to construct such works as it might deem necessary and expedient for the completion and maintenance of its road did not authorize it to place them wherever it might think proper in the city, without reference to the property and rights

of others; and that whatever the extent of the authority conferred, it was accompanied with the implied qualification that the works should not be so placed as by their use to unreasonably interfere with and disturb the peaceful and comfortable enjoyment of others in their property. In the language of the opinion: "Grants of privileges or powers to corporate bodies, like those in question, confer no license to use them in disregard of the private rights of others, and with immunity for their invasion." The reasoning proceeded upon the ground (p. 332) that no authority conferred by Congress would justify an invasion of private property to an extent amounting to an entire deprivation of its use and enjoyment, without compensation to the owner; "nor could such authority be invoked to justify acts, creating physical discomfort and annoyance to others in the use and enjoyment of their property, to a less extent than entire deprivation, if different places from those occupied could be used by the corporation for its purposes, without causing such discomfort and annoyance"; and hence that the legislative authorization conferred exemption only from suit or prosecution for the public nuisance, and did not affect "any claim of a private citizen for damages for any special inconvenience and discomfort, not experienced by the public at large."

The present case, in the single particular already alluded to—that is to say, with respect to so much of the damage as is attributable to the gases and smoke emitted from locomotive engines while in the tunnel, and forced out of it by the fanning system therein installed, and issuing from the portal located near to plaintiff's property in such manner as to materially contribute to render his property less habitable than otherwise it would be, and to depreciate it in value; and this without, so far as appears, any real necessity existing for such damage—is, in our opinion, within the reason and authority of the decision just cited. This case differs from that of the *Baptist Church*,

in that there the railroad company was free to select some other location for the repair shop and engine house; while here the evidence shows that the location of the tunnel and its south portal was established pursuant to law, and not voluntarily chosen by defendant. This circumstance, however, does not, as we think, afford sufficient ground for a distinction affecting the result. The case shows that Congress has authorized, and in effect commanded, defendant to construct its tunnel with a portal located in the midst of an inhabited portion of the city. The authority, no doubt, includes the use of steam locomotive engines in the tunnel, with the inevitable concomitants of foul gases and smoke emitted from the engines. No question is made but that it includes the installation and operation of a fanning system for ridding the tunnel of this source of discomfort to those operating the trains and traveling upon them. All this being granted, the special and peculiar damage to the plaintiff as a property owner in close proximity to the portal is the necessary consequence, unless at least it be feasible to install ventilating shafts or other devices for preventing the outpouring of gases and smoke from the entire length of the tunnel at a single point upon the surface, as at present. Construing the acts of Congress in the light of the Fifth Amendment, they do not authorize the imposition of so direct and peculiar and substantial a burden upon plaintiff's property without compensation to him. If the damage is not preventable by the employment at reasonable expense of devices such as have been suggested, then plaintiff's property is "necessary for the purposes contemplated," and may be acquired by purchase or condemnation (32 Stat. 909, 916, c. 856, § 9), and pending its acquisition defendant is responsible. If the damage is readily preventible, the statute furnishes no excuse, and defendant's responsibility follows on general principles.

No doubt there will be some practical difficulty in dis-

tinguishing between that part of the damage which is attributable to the gases and smoke emitted from the locomotive engines while operated upon the railroad tracks adjacent to plaintiff's land, and with respect to which we hold there is no right of action, and damage that arises from the gases and smoke that issue from the tunnel, and with respect to which there appears to be a right of action. How this difficulty is to be solved in order to determine the damages that should be assessed in this action, or the compensation that should be awarded in case condemnation proceedings are resorted to, is a question not presented by this record, and upon which, therefore, no opinion is expressed.

> *Judgment reversed and cause remanded to the Court of Appeals, with directions to reverse the judgment of the Supreme Court of the District and remand the cause to that court with directions for a new trial, and for further proceedings in accordance with the views above expressed.*

MR. JUSTICE LURTON dissents.