## WIGHT v. DANIELS. (No. 2308.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 9, 1920. Rehearing Denied Dec. 23, 1920.)

1. **Railroads** ⬸222(5) — **Conclusion held to show damages allowed only for construction of switch.**

Where the court, though finding that considerable noise and smoke were made by the operation of trains on a newly constructed switch, concluded as a matter of law that the railway company was liable for damage to adjacent property by constructing the embankment and the track complained of, the compensation awarded was allowed only for damages accruing from the construction of the switch-track, and not from the operation of trains thereon.

2. **Eminent domain** ⬸113—**Railroad not liable for damage to adjoining property by presence of switch track on right of way.**

A railroad company is not liable to the owner of adjoining property for the depreciation of the value of such property caused by the mere presence of a newly constructed switch track upon the railroad right of way adjoining the property.

Willson, C. J., dissenting.

⬸For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Gregg County; Chas. L. Brachfield, Judge.

Action by Oliver Daniels against Pearl Wight, as receiver of the Texas & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The appellee owns a lot with a two-story residence on it in Longview. The lot and house are on the east side of Second street, and the premises adjoin the right of way of the Texas & Pacific Railway Company on the south side. The main line of the railway, constructed some years ago, runs east and west through the middle of the right of way, and is 120 feet distant from the residence. In November, 1917, a switch track was laid on an embankment constructed on the right of way, north of the main line. The switch track was distant about 40 feet from the residence, and was entirely on the right of way, and no part of it was on the plaintiff's lot. Plaintiff brought the suit for damages, claiming that the building of the switch track and the operation of trains on same depreciated the value of the house and lot. The defendant answered by denial, and specially that the switch track and embankment were constructed by the defendant as receiver under authority of the federal court for the western district of Louisiana, and that the construction of the switch track was a necessity in order for the railway, chartered as a federal corporation, to handle the interstate commerce tendered for transportation. The case was tried before the court without a jury, and judgment entered for the plaintiff.

The court made the following findings of fact:

"(1) That the defendant is the receiver of the property of the Texas & Pacific Railway Company, and that he was appointed as such receiver by the United States District Judge of the Western District of Louisiana on October 27, 1916, and as such receiver acting under the authority of the court he had the track and embankment constructed near the premises of the plaintiff as it is.

"(2) That the defendant constructed the embankment and track on the right of way of the Texas & Pacific Railway Company, and that no part of it was constructed on the property of the plaintiff; the house of the plaintiff being about 40 feet from the edge of the embankment.

"(3) That from the time of the construction of the said track and embankment the defendant has operated engines, cars, and trains over the said track, and that considerable noises and smoke have been made by reason of the operation of said trains, cars, and engines over the said track.

"(4) That the construction of the said track and embankment at that place, damaged the property of the plaintiff in the sum of $1,375, in that the construction of the track and embankment reduced the market value of the plaintiff's property in the sum of $1,375.

"(5) That it was necessary for the defendant to construct the track and embankment where they were constructed and where they are now, for the purpose of handling the interstate and intrastate commerce handled by him as receiver of the Texas & Pacific Railway Company, and it was necessary to construct them and maintain them at such place in order for the railway company to handle interstate and intrastate commerce intrusted to it.

"(6) That the Texas & Pacific Railway Company is a corporation duly organized and incorporated under the laws of the United States by act of Congress approved March 3, 1871, and acts amendatory thereof on May 2, 1872, March 3, 1873, June 22, 1874.

"(7) That the defendant at the time of the construction of the track and embankment was receiver of the properties of the Texas & Pacific Railway Company and operating same for the purpose of carrying interstate commerce."

Young & Stinchcomb, of Longview, for appellant.

F. B. Martin and W. E. Beall, both of Longview, for appellee.

LEVY, J. (after stating the facts as above). A switch track was built on the right of way of the railway company, and engines and cars were operated over it. The appellee's property adjoined the right of way. The trial court made the following finding:

"I find that the defendant has operated engines and cars over said track, and that considerable noises and smoke have been made by reason of the operation of said trains and engines over the said track."

The court then further finds as follows:

"I find that the construction of the said track and embankment at that place damaged the property of the plaintiff in the sum of $1,375 in that the construction of the track and embankment reduced the market value of the plaintiff's property in the sum of $1,375."

And the court made the following conclusion of law:

"I conclude as a matter of law that the defendant is liable to the plaintiff for the damage to his property by constructing the track and the embankment on the right of way of the Texas & Pacific Railway Company near to the property of the plaintiff, and that the damages he suffered amounted to $1,375."

The appellant insists that the findings and the conclusion of the court clearly and specifically show that compensation was allowed only for damages accruing from the "construction of said track and embankment."

[1, 2] The court finds that "considerable noises and smoke have been made by reason of the operation of said trains," but, as insisted, does not include and allow compensation therefor as damages. The compensation was, we think, allowed only for damages accruing from the construction of the switch track, and the pertinent question for decision under the precise facts is: Does the mere bodily presence of a switch track near

the property of another give rise to the liability here asserted, which is depreciation in the market value of the property? We think that the mere bodily presence of the switch track in this case does not of itself, unaccompanied, as here, by some special damage, render the appellant liable for compensation to the adjoining owner. Ry. Co. v. Shaw, 99 Tex. 559, 92 S. W. 30, 6 L. R. A. (N. S.) 245, 122 Am. St. Rep. 663; Richards v. Washington Terminal Co., 233 U. S. 546, 34 Sup. Ct. 654, 58 L. Ed. 1088, L. R. A. 1915A, 887; I. C. J. p. 965. It is because a physical damage or injury is not shown to the abutting property in suit. The damage to abutting property allowable in the various reported cases is based on operation and construction of the works, or construction of the works causing some special injury physically to the adjoining property. Consequently, we think, the cases have no application to the peculiar facts in this case. The writer thinks the case of Wight, Receiver, v. J. E. Belcher (just decided by this court) 226 S. W. 472, is different from this case on the facts. There the switch track and embankment caused the adjoining land to be flooded with water.

The judgment is reversed, and the cause is remanded.

Chief Justice WILLSON does not agree to the conclusion of the majority of the court and dissents therefrom.

WILLSON, C. J. (dissenting). I think appellant has not shown error in the judgment, and therefore that it should be affirmed.

As I understand it, the case made by the record is about as follows:

Appellee alleged in his petition that the embankment in question was eight feet high and was constructed by appellant on the part of the railway company's right of way adjoining his premises. He further alleged, and as a witness testified, and was not contradicted, that after appellant laid the track on the embankment he operated engines and cars thereon, which caused dust and soot to go into appellee's dwelling house, injuring clothing, furniture, bedclothes, etc., therein; and further testified without contradiction that long strings of cars were often stopped on the track, directly south of his said house, "cutting off the breeze," using his language, "and making his home hot." He further alleged that the operation of trains over the track caused "great noises," and as a witness testified, and he was not contradicted, that frequently trains were made upon the track, and that "sometimes," again using his language, "the engine blows and makes other noises for from 15 minutes to one hour before leaving." He further alleged that his premises were worth $8,000 before the switch track was constructed, and afterwards were worth not more than $5,100; and he proved, without contradiction in the testimony, that

"the construction of the switch track and embankment," quoting the language of a witness, "reduced the value of this property $1,375." The sufficiency of the allegations in the petition was not in any way challenged, and no objection was urged to any of the testimony admitted in support of same. The trial was to the court without a jury. He found as facts: That appellee's lot abutted on the railway company's right of way; that the embankment and track in question were entirely on said right of way and about 40 feet from appellee's dwelling house; that appellant "operated engines, cars, and trains over the said track and that considerable noises and smoke," quoting, "have been made by reason of the operation of said trains, cars, and engines over the said track"; and that "the construction of the track and embankment," quoting, "reduced the market value of plaintiff's property in the sum of $1,375." The court concluded that appellee was entitled to recover, and rendered judgment in his favor for said sum of $1,375.

The case as so made was presented to this court on five assignments of error, no one of which was submitted as a proposition in itself, and no one of which, therefore, need be set out here, as this court is confined to a consideration of germane points presented by the propositions under them. Ry. Co. v. Wood, 41 Tex. Civ. App. 226, 92 S. W. 259; Tel. Co. v. Vance, 151 S. W. 904; Ariola v. Newman, 51 Tex. Civ. App. 617, 113 S. W. 157. In the first of the cases cited the court said:

"We can only consider the points in the assignment which are presented by a proposition, and any not so presented must be regarded as waived."

And in the second of said cases the court said:

"The office of a proposition under an assignment is to specifically present the question of law intended to be embraced by the assignment, and where an assignment is not relied upon as in itself a proposition, but the pleader undertakes to state propositions thereunder, we think that this court is not authorized to consider any question not suggested by such propositions, nor is the appellee expected to make answer to them. Rule 30 (142 S. W. xiii.) Any other rule would not be fair to appellee, who is only required to answer the question presented by such propositions."

As I understand the propositions under the assignments, appellant did not suggest in any of them that the judgment was erroneous because it was, as determined by the majority, only for damages caused to appellee's property by "the mere bodily presence of the switch track, unaccompanied by any special damages." The first and second of the assignments were grouped over a proposition as follows:

"In a suit against a receiver of a railway company for damages for depreciation in value

of real estate, it is error for the court to find that the construction of tracks and an embankment reduced the market value of plaintiff's property; there being no allegations in the plaintiff's petition as to the market value just before or just after the construction of said embankment and tracks, and no evidence as to the value just before and just after the said construction."

The third and fourth assignments were grouped over the propositions as follows:

"(1) In a suit against the receiver of a railway company for damages for depreciation in value of real estate when there is no allegation in the petition that the damages are the result of any negligence on the part of the receiver of the railway company, there can be no recovery.

"(2) In a suit against a receiver of a railway company, duly chartered by Congress and engaged in interstate commerce, in which damages are asked for depreciation in value of property that is neither taken nor destroyed, there can be no recovery unless it is alleged and proved that the damages are the result of negligence upon the part of the receiver.

"(3) In a suit against a receiver of a railway company for damages to property by the construction of additional tracks and embankment, where it is alleged and shown that said receiver was acting under authority of the court appointing him in constructing the said tracks and embankment, and that said receiver had not been negligent in said construction, and that it was necessary to construct the tracks and embankment where they were constructed in order to handle the interstate commerce tendered for transportation, the receiver is not liable."

The proposition under the fifth assignment was as follows:

"In a suit against the receiver of a railway company for damages for depreciation in value of property caused by the building of additional tracks and an embankment, the measure of damages is the market value of the property just before and just after the construction of said embankment and tracks, and it is error to render judgment on speculative testimony as to what the property might have brought some time in the future had it not been for the construction of the tracks and the embankment."

It will be noted that the only reasons suggested by appellant in the propositions why the judgment was erroneous were: (1) That it did not appear from either the pleading or from competent testimony what the market value of appellee's property was just before and just after the time when the embankment and track were constructed. (2) That it did not appear from either the pleadings or the proof that the damages awarded to appellee were the result of any negligence on the part of appellant. In the absence of "fundamental error," and it is not pretended there was any, this court, I think, had a right to reverse the judgment only for the reasons, or one of them, suggested in the propositions; and it is obvious from the opinion disposing of the appeal that it is not reversed for either of those reasons.

But if I thought this court had a right to look beyond the propositions in appellant's brief for a reason for reversing the judgment, I would not think it should be reversed for the reason given by the majority, for I do not think it appears from the record that the recovery by appellee in the trial court was for the mere "bodily presence of the switch track unaccompanied by special damages." As shown by the statement of the case made above, it appeared from uncontradicted testimony that the embankment and track were constructed near to (within 40 feet, the trial court found) appellee's dwelling house, and that the operation of trains thereon caused dust and soot to go onto appellee's premises and injure his said house, and clothing, furniture, etc., therein. I think the trial court's finding that appellee's "house and lot were damaged by the construction of the track and embankment in the sum of $1,375" should be considered with reference to the pleading and the testimony, and construed as a finding that the damage to appellee's property was not such as resulted alone from the construction of the embankment and track, but also such as resulted from the use made thereof after same were constructed. I have no doubt that both the witness when he testified and the court when he found, as stated, to wit, that the construction of the embankment and switch track reduced the value of appellee's property $1,375, had in mind, not only the injury to the property resulting directly from the presence of the embankment and track, but also the injury thereto resulting consequentially from the use made thereof. If said testimony and finding should be so construed, then the conclusion of the majority that the damages awarded were for the "mere bodily presence of the switch track, unaccompanied by any special damage," was erroneous.

If, however, I thought I was wrong about this, and that the majority had correctly determined the meaning of the trial court's finding, I would nevertheless be of the opinion the judgment should be affirmed; for I do not think the law is that a person owning a dwelling house and lot abutting on a railway company's right of way, rendered less valuable by the mere construction and continuance on such right of way and near to such dwelling house of an embankment and switch track, is not entitled in any event to recover for such depreciation in the value of his property. As I understand it, the damages recoverable in this kind of a case are measured solely by the effect the construction and use of the improvement has on the market value of the plaintiff's property. If the effect is peculiar to the property and renders it less valuable, the plaintiff is entitled to recover, without respect to whether such ef-

fect is due to the character of the improvement alone or to both its character and the use made of it. There can be no recovery on account merely of either the character or the use made of the improvement, and the character and the use are important only as evidence to show whether the effect of the improvement was peculiar to the plaintiff's .property or not, and if it was, whether it rendered it less valuable or not, and, if it did, how much less valuable. And I do not understand either of the cases cited in the opinion of the majority to hold the contrary. In the first of said cases (Ry. Co. v. Shaw, 99 Tex. 559, 92 S. W. 30, 6 L. R. A. [N. S.] 245, 122 Am. St. Rep. 663), the jury found against the plaintiff's claim for damage to her property abutting on the railway company's right of way, but in her favor on account of personal discomfort she suffered. The point, and only point decided, was that she was not entitled to recover damages "for the annoyance and discomfort to herself occasioned by carrying on of the railroad's business and the invasion of her home of the noise, dust, odors, etc., resulting therefrom." In the other case (Richards v. Washington Terminal Co., 233 U. S. 546, 34 Sup. Ct. 654, 58 L. Ed. 1088, L. R. A. 1915A, 887), the court merely held that the provision in the Fifth Amendment to the federal Constitution that private property shall not be taken for public use without just compensation "does not require," quoting the syllabus, "that an owner of noncontiguous property, no part of which was actually appropriated, but which lies in the neighborhood of a railway tunnel and tracks constructed and maintained under the authority of the acts" of Congress "upon property acquired by purchase or condemnation proceedings, be compensated for the damage through smoke, cinders, gases, dust, dirt, and vibration incident to the prudent operation of the railroad." What the court would have held if the inhibition in said amendment to the Constitution also had been as it is in the Constitution of this state, against damaging private property for public use without just compensation, the opinion does not disclose. The language of the Constitution of this state is that—

"No person's property shall be taken, damaged or destroyed for, or applied to, public use without adequate compensation being made, unless by the consent of such person." Article 1, § 17.

I understand that language to mean what I understand Chief Justice Phillips to have determined it meant in Improvement District v. City of Ft. Worth, 106 Tex. 148, 158 S. W. 164, 48 L. R. A. (N. S.) 994, when he said:

"In the construction of legally authorized public works, it is inevitable that benefits will accrue to the property of some persons and injury result to that of others. If the injury that thus results from the improvement be only of such a nature as is suffered from that cause in common with other property in the same community or section, the damages thus accruing are deemed merely consequential, and no right of action exists. In such cases it is not considered that the property is 'damaged' within the contemplation of the constitutional provision, and the right to compensation is denied. If, however, a public work is constructed which inflicts an injury peculiar to certain property not suffered in common with other property in the community or section, then such property is 'damaged' within the meaning of the Constitution and the law will not permit the infliction of such injury without the allowance of just compensation."

And see Ry. Co. v. Hall, 78 Tex. 169, 14 S. W. 259, 9 L. R. A. 298, 22 Am. St. Rep. 42; Settegast v. Ry. Co., 38 Tex. Civ. App. 623, 87 S. W. 197; Brewster v. City of Forney, 196 S. W. 636; Ry. Co. v. Davis, 45 Tex. Civ. App. 212, 100 S. W. 1013; Ry. Co. v. Calkins, 79 S. W. 852; 20 C. J. 671 et seq.

In support of the judgment I think the finding of the court that appellee's property was damaged ought to be construed as a finding that the damage resulted from an injury peculiar to the property and not suffered in common with other property in its locality.