Roosevelt H. BELLAMY and Marilyn L. Bellamy, Plaintiffs,

v.

UNITED STATES of America, Peoples Savings & Loan Association, a Corp., and Chaphin Company, a Corp., Defendants.

No. C/A 7416.

United States District Court
E. D. South Carolina,
Florence Division.

July 13, 1964.

C. Weston Houck and Willcox, Hardee, Houck, Palmer & O'Farrell, Florence, S. C., for plaintiffs.

Terrell L. Glenn, U. S. Atty., Columbia, S. C., Thomas P. Simpson, Asst. U. S.

Atty., Charleston, S. C., for the United States.

Suggs & McCutcheon, Conway, S. C., for defendant, Peoples Savings & Loan Ass'n.

MARTIN, District Judge.

This matter is before the Court on the United States' motion to dismiss and/or for summary judgment filed July 1, 1963.

Plaintiffs in this action seek to recover damages in the amount of $10,000 for an alleged taking of their property by the United States in connection with the operation of the Myrtle Beach Air Force Base. In paragraph 4 of the amended complaint, Plaintiffs allege that in the operation of said Base the United States at all hours of day and night secures jet engines on "trim tabs" and tests them; that, during this process, the jet engines are run at very high speeds and emit loud noises and fumes and cause surrounding objects to vibrate; that these tests are performed with the exhausts facing directly toward Plaintiffs' home and the noise, fumes and vibrations coming from said engines are blasted directly toward Plaintiffs' home and property.

In answer to interrogatories, the United States stated that there is a "jet test cell" located 1,640 feet south of the southwest corner of Plaintiffs' property which is used to check an average of %oths of an engine a day, based on a 22-workday month. An engine is run at 100 per cent r. p. m. for eight to ten minutes with an additional two minutes at after-burner position. In tests conducted by the United States, an engine running at 100 per cent r. p. m. produced 95 decibels of sound and, with after-burner on, it produced 101 decibels of sound. There is also a "power check pad" located approximately 1,490 feet south of the southeast corner of Plaintiffs' property which is used to check an average of 86.4 engines per month. For times similar to those on the "jet test cell" and in tests performed by the United States, these engines produced, with jet engine running at 100 per cent r. p. m., 90 decibels of sound and, with after-burner on, 95 decibels of sound. Engines running simultaneously on the "jet test cell" and "power check pad" increased the noise level one or two decibels.

Noise at these levels and for these periods caused Plaintiffs to suffer a substantial interference to the use and enjoyment of their property. However, unless this interference amounts to a total destruction or a deprivation of all or most of the Plaintiffs' interest, it does not constitute a taking and is not compensable under the Tucker Act, 28 U.S.C. § 1346(a) (2).

The facts and issues in the case of William J. Batten et al. v. United States of America, 306 F.2d 580 (10 Cir. 1962), cert. denied 371 U.S. 955, 83 S.Ct. 506, 9 L.Ed.2d 502, rehearing denied 372 U.S. 925, 83 S.Ct. 718, 9 L.Ed.2d 731, are almost identical to this case. There plaintiffs sought to recover for damages caused by the operation of jet aircraft by the United States of America at Forbes Air Force Base, Pauline, Kansas. The amount of activity creating noise exceeded the activity in the present case and the noise level varied from 90 to 117 decibels. The Court, in affirming the decision below which denied recovery, stated:

"No amount of sympathy for the vexed landowners can change the legal principles applicable to their claims. We do not have either a tort or a nuisance case. The plaintiffs sue under the Tucker Act and whether the applicability of that Act depends on a taking without compensation in violation of the Fifth Amendment or on an implied promise to pay for property taken, the claims are founded on the prohibition of the Fifth Amendment, 'nor shall private property be taken for public use without just compensation.' [5]

"5. United States v. Dickinson, 331 U.S. 745, 748, 67 S.Ct. 1382, 91 L.Ed. 1789.

"In construing and applying this constitutional provision the federal courts have long and consistently recognized the distinction between a

taking and consequential damages. In Transportation Company v. Chicago, 99 U.S. 635, 642, 25 L.Ed. 336, the Supreme Court held that governmental activities which do not directly encroach on private property are not a taking within the meaning of the Fifth Amendment even though the consequences of such acts may impair the use of the property. The principle was repeated in United States v. Willow River Power Co., 324 U.S. 499, 510, 65 S.Ct. 761, 89 L.Ed. 1101, the Court saying that 'damage alone gives courts no power to require compensation.' We have recognized the rule in this circuit by our holding in Harris v. United States, 10 Cir., 205 F.2d 765, 767, that under the federal constitution 'damages to property not taken are compensable only as a consequence of or incidental to an actual taking.'

"Because of this rule which denies the recovery of consequential damages in the absence of any taking, many state constitutions provide in substance that private property shall not be taken or damaged for public use without compensation.[6] How-

"6. Richards v. Washington Terminal Company, 233 U.S. 546, 554, 34 S.Ct. 654, 58 L.Ed. 1088. In 2 Nichols on Eminent Domain (3d ed. 1950) § 6.44, pp. 324–325, there is a list of 25 states whose constitutions so provide. Interestingly every state within the Tenth Circuit, except Kansas, has so provided.

ever, the federal obligation has not been so enlarged either by statute or by constitutional amendment."

\*　\*　\*　\*　\*　\*

"In the instant case there is no total destruction and no deprivation of 'all or most' of the plaintiffs' interests. The plaintiffs do not suggest that any home has been made uninhabitable or that any plaintiff has moved because of the activities at the Base. The record shows nothing more than an interference with use and enjoyment."

\*　\*　\*　\*　\*　\*

"Each of these disturbing conditions is brought to the plaintiffs' properties through the air and they do not effect an actual displacement of a landowner from space within which he is entitled to exercise dominion consistent with recognized concepts of real property rights. Such displacement is a fact when occasioned by repeated airplane flights. Sound waves, shock waves, and smoke pervade property neighboring that on which they have their source but the disturbance caused thereby is only a neighborhood inconvenience unless they are intentionally directed to some particular property as was the case in Richards v. Washington Terminal Co., supra, or unless they force the abdication of the use of space within the landowner's dominion. The activities of which the plaintiffs complain are not directed against them or their property and do not arrogate to the government any of the plaintiffs' dominion over their properties. The situation is common to that found on all the private property surrounding the Base.

"The vibrations which cause the windows and dishes to rattle, the smoke which blows into the homes during the summer months when the wind is from the east, and the noise which interrupts ordinary home activities do interfere with the use and enjoyment by the plaintiffs of their properties. Such interference is not a taking. The damages are no more than a consequence of the operations of the Base and as said in United States v. Willow River Power Co., supra, they 'may be compensated by legislative authority, not by force of the Constitution alone.' As we see the case at bar, the distinctions which the Supreme Court has consistently made between 'damages' and 'taking' control and compel denial of recovery."

Plaintiffs also allege that planes frequently fly over their property at low

altitudes and that helicopters often fly over at low altitudes and frequently hover over Plaintiffs' property. However, upon oral argument, Plaintiffs' counsel stated to the Court that Plaintiffs were not in a position to sustain the burden set out in United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206.

Plaintiffs' allegations with regard to the closing of a portion of the highway below their property without providing a suitable substitute highway for their use are unfounded as it is uncontradicted that this took place prior to August 1956, approximately two years prior to the time Plaintiffs acquired their property.

There being no dispute as to the facts in this case, the Court finds that the United States is entitled to have its motion for summary judgment granted. It is, therefore,

Ordered that the motion for summary judgment be and the same hereby is granted.