**UNITED STATES of America, Plaintiff,**

v.

**CERTAIN PARCELS OF LAND IN KENT COUNTY, MICHIGAN, Board of Education of the City of Grand Rapids, Michigan, et al., and unknown owners, Defendants.**

**Misc. No. 151.**

United States District Court
W. D. Michigan, S. D.

March 23, 1966.

---

J. Warren Eardley, Grand Rapids, Mich., for plaintiff.

Dutchess, Mika, Miles, Meyers, Merdzinski & Snow, Grand Rapids, Mich., Wendell A. Miles, Grand Rapids, Mich., of counsel, for defendant Board of Education.

FOX, District Judge.

This case is presently before the court on the motion of plaintiff to strike defendants' answer, or, in the alternative, for summary judgment.

In connection with the contruction, reconstruction, and improvement of Michigan Highway Project I–96–1(10)66, plaintiff condemned a portion of land owned by defendant Board of Education of the City of Grand Rapids. The property in its entirety is used as a high school facility in defendant Board's school system, and on it are located a high school building, school playgrounds, and parking areas.

The portion of land designated in the complaint as taken by the plaintiff had been used by the defendant Board as parking lots for the high school faculty.

In its answer, the Board of Education of the City of Grand Rapids alleges that the complaint does not set forth accurately and sufficiently the full extent of the lands, properties and interests of defendant Board which were taken.

The entire property is divided by certain city streets, separating, for example,

the high school building from the playground area, but with this exception, the property forms a contiguous whole.

Defendant Board's prime contention is that "the noise, vibration, obstruction to sight and vision, dirt and filth coming from said highways * * * are so intense, severe and great as to render the said 'Union High School' ineffective and useless for the purpose of educating students in said facility."

The Government argues that such damages, if they do in fact exist, are only consequential damages, and therefore uncompensable, J. A. Tobin Construction Co. v. United States, 343 F.2d 422 (CCA 10, 1965); Stipe v. United States, 337 F.2d 818 (CCA 10, 1964); Freeman v. United States, 167 F.Supp. 541 (D.C. W.D.Okla., 1958), and accordingly moves the court to grant its motion for summary judgment.

■ After reviewing the decided cases in this area, the court is of the opinion that the issue for decision is whether or not the interference with plaintiff's property is so substantial as to be a taking, and thus compensable under the Fifth Amendment to the Federal Constitution, or of such a lesser character as to make the interference only a consequential damage. This being a factual dispute in the setting of this case, the motion for summary judgment must be denied. Rule 56(c), Federal Rules of Civil Procedure; Simler v. Conner, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963); Poller v. Columbia Broadcasting System, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).

The United States Supreme Court, in the cases of United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), and Griggs v. Allegheny County, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962), considered the question of "takings" by airplane overflights.

The Causby case, supra, was decided on an "invasion" theory—that the property of the affected party had been invaded by the airplanes in their flights through the airspace above the property.

In both Causby and Griggs, supra, the court found that an easement had been taken in the airspace by the offending party.

However, the facts which triggered the finding that there was a taking were the respective interferences with the property on the ground.

In Causby, supra, the effect of the overflights was to destroy the existing use of the property as a chicken farm, as well as to deprive the owners and family of sleep and to make them nervous and frightened.

In Griggs, supra, the overflights interfered with conversation and telephone calls, prevented sleep or awakened the inhabitants from sleep, rattled windows and cracked plaster in the home, impaired health and sometimes caused the family to sleep elsewhere.

Thus, even though the nature of those cases occasioned the finding of actual physical takings of easements, it was the damage and interference with the use of the property below which was the measure of the taking.

■ As the court had earlier stated in United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945):

> " * * * The courts have held that the deprivation of the former owner rather than the accretion of a right or interest to the sovereign constitutes the taking. Governmental action short of acquisition of title or occupancy has been held, if its effects are so complete as to deprive the owner of all or most of his interest in the subject matter, to amount to a taking.[5]" Id. at 323 U.S. 378, 65 S.Ct. 359, 89 L.Ed. 318.

"5. See e. g., United States v. Welch, 217 U.S. 333, 30 S.Ct. 527, 54 L.Ed. 787, 28 L.R.A.,N.S., 385, 19 Ann.Cas. 680; Richards v. Washington Terminal Co., 233 U.S. 546, 34 S.Ct. 654, 58 L.Ed. 1088, L.R.A.1915A, 887."

While most commonly the cases dealing with the eminent domain power treat of actual physical invasions of property,

there have been numerous acknowledgments of other types of taking.

"The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322, 326 (1922).

"* * * we have recognized that action in the form of regulation can so diminish the value of property as to constitute a taking." (Citations omitted.) United States v. Central Eureka Mining Co., 357 U.S. 155, 168, 78 S.Ct. 1097, 1104, 2 L.Ed.2d 1228, 1236 (1958).

In Armstrong v. United States, 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960), the court found that materialmen who had liens on vessels under construction by a government contractor, and whose liens remained valid but valueless after title to the uncompleted vessels had been transferred to the United States (by reason of sovereign immunity from suit), had suffered a taking and loss compensable under the Fifth Amendment.

The court there was influenced by the destruction of the value of the liens and made particular mention of the difficulty involved in deciding what destructions of property as a result of lawful governmental actions are "takings," and therefore compensable, and what destructions are consequential damages, and accordingly uncompensable. Id. at 364 U.S. 48, 80 S.Ct. 1563, 4 L.Ed.2d 1560–1561.

The case with strongest bearing on the instant one is Eyherabide v. United States, 345 F.2d 565 (Ct.Cl.1965). There the plaintiff's 80-acre livestock ranch bordered a naval gunnery range. The Navy's activities in connection with the testing of various kinds of aerial ordnance were not confined within the range and some of the buildings on plaintiffs' land were destroyed.

In reaching a decision in favor of the plaintiffs, the Court said, at page 569:

"* * * In appraising this conduct, we can properly take account of the acts done outside of the borders of plaintiffs' land but which affected its use, along with the actual invasions. Once there is a significant intrusion onto property, the character and magnitude of the appropriation must be evaluated on the basis of all the related circumstances, not merely the acts of invasion alone. Cf. Mock et al. v. United States, Ct.Cl., Nos. 31–59, 349–359, decided Feb. 14, 1964, slip op., pp. 2–3."

(It should be noted here that the facts in the present case are legally analogous, since there was a taking of a portion of defendant's property which is undisputed, and defendant is seeking relief for the effects on the remainder of the property due to activities resulting from that taking—acts which affect the use of defendant's property.)

On the character of the "taking," the Court had this to say:

"* * * This was not a marginal harm, but a nearly total deprivation of the benefit of the tract. If the defendant was responsible for the acts causing this loss, the injury to the owners was so great that a taking can properly be implied." Ibid.

■ Other courts, while not deciding in favor of property owners, have nonetheless recognized the principle that interference, if such as to destroy the use of the property, will be considered a compensable taking.

In Batten v. United States, 306 F.2d 580 (CCA 10, 1962), cert. den. 371 U.S. 955, 83 S.Ct. 506, 9 L.Ed.2d 502, Reh. den. 372 U.S. 925, 83 S.Ct. 718, 9 L.Ed. 2d 731, property owners affected by the noise, vibration and smoke of a nearby jet base were denied recovery. However, a dissent was written by Chief Judge Murrah, Id. at 585, and the actual holding in the case impliedly recognized the foregoing principle.

"* * * In discussing the meaning of the word 'taken,' the Court said in United States v. General Motors Corp., 323 U.S. 373, 378, 65 S.Ct. 357, 89 L.Ed. 311, that governmental action

short of occupancy was a taking 'if its effects are so complete as to deprive the owner of all or most of his interest in the subject matter'.[9]

"9. Cf. United States v. Dickinson, supra, where the Court said: 'Property is taken in the constitutional sense when inroads are made upon an owner's use of it to an extent that, as between private parties, a servitude has been acquired either by agreement or in course of time.

"In the instant case there is no total destruction and no deprivation of 'all or most' of the plaintiffs' interests. The plaintiffs do not suggest that any home has been made uninhabitable or that any plaintiff has moved because of the activities at the Base. The record shows nothing more than an interference with use and enjoyment." Id. at 584–585.

Likewise, in Bellamy v. United States, 235 F.Supp. 139, (E.D.S.C.1964), there was an operation of jets on a base in close proximity to the plaintiff's property. Again, although the claim was denied, the court made clear the rationale which it would follow in reaching its decision:

"However, unless this interference amounts to a total destruction or a deprivation of all or most of the Plaintiff's interest, it does not constitute a taking and is not compensable under the Tucker Act, 28 U.S.C. § 1346(a) (2)." Id. at 140.

■ The logic of these decisions is unassailable, for it is obvious beyond proof that the damage to the property is what the courts look to in measuring the taking, and in these cases the damage is claimed to be due to noise, vibration, and other incidents of the particular activity involved. Rather than blindly follow the rule argued for by plaintiff here, that no such damages are compensable, the courts have, in each instance, looked to the evidence to see the extent of the interference and have announced that if it is so great as to constitute a wholly unreasonable and substantially destructive interference with the property involved, a taking will be found.

If the strict "invasion" theory were to be followed, it would logically follow that the only period of time within which the noise, dirt, and vibration could be considered as damaging the property would be that which was required for the airplanes, for example, to pass over the property below. Yet experience refutes this position, since unquestionably the bulk of the damage is done during the far longer time during which the airplane approaches and leaves the area directly above the complainant's property. (The court in Causby, supra, in fact admits that it is not the air easement of which the property owner is deprived which is the source of his recovery, but rather the deprivation of his beneficial ownership. Id. at 328 U.S. 261–262, 66 S.Ct. 1062, 90 L.Ed. 1210.)

A far more tenable theory, and the approach followed in the cases cited above, is that set forth in Richards v. Washington Terminal Co., 233 U.S. 546, 34 S.Ct. 654, 58 L.Ed. 1088 (1914). As pointed out in the Causby case, supra, and in Freeman v. United States, 167 F.Supp. 541 (D.C.W.D.Okla., 1958), the Richards case did deny recovery for incidental damages. However, the Court also held that in respect to the "special and peculiar" damages resulting from the installation of an exhaust system in a railroad tunnel which emitted waste gases, cinders and the like directly on and into plaintiff's habitation, there was a Fifth Amendment "taking" for which compensation would be given.

The Court stated its thesis in this manner at 233 U.S. 557, 34 S.Ct. 658, 58 L.Ed. 1093:

" * * * All this being granted, the special and peculiar damage to the plaintiff as a property owner in close proximity to the portal is the necessary consequence, unless at least it be

feasible to install ventilating shafts or other devices for preventing the outpouring of gases and smoke from the entire length of the tunnel at a single point upon the surface, as at present. Construing the acts of Congress in the light of the 5th Amendment, they do not authorize the imposition of so direct and peculiar and substantial a burden upon plaintiff's property without compensation to him. If the damage is not preventable by the employment at reasonable expense of devices such as have been suggested, then plaintiff's property is 'necessary for the purposes contemplated,' and may be acquired by purchase or condemnation."

The instant case is not one in which there is a possibility of compensation for consequential damages. The law is clear that such damages are not compensable under the Fifth Amendment. What is at issue here is a claim that the interference with defendant's property is so great as to render that property ineffective and useless (in effect, destroyed) for the purposes of education.

What courts have in fact said, when denying recovery for this sort of claim, is that they have not found the interference great enough to meet the "substantial destruction or deprivation" test.

The burden upon defendant to establish the facts necessary to support its claim is a severe one, and in view of the decided cases, this court does not deem the sort of "invasion" which plaintiff contends for to be a necessary element of recovery in a case of this sort.[1] The facts relied upon by defendant are not settled and remain subject to proof.

Accordingly, the motion for summary judgment is denied and an order may be drawn by the defendant for the court's signature.

[1]. Although not binding authority in federal court, it is noteworthy that the courts of two states with "taking" provisions similar to the Fifth Amendment's in their constitutions, have chosen to follow the same path. Board of Education of Town of Morristown v. Palmer, 88 N.J.Super. 378, 212 A.2d 564 (1965 Sup.Ct., App.Div.); Thornburg v. Port of Portland, 233 Or. 178, 376 P.2d 100 (Sup.Ct.1962).