James N. BARBIAN and Joan L. Barbian, Plaintiffs-Appellants,

v.

Constantine PANAGIS and the City of Milwaukee, Defendants-Appellees.

No. 81–2010.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 11, 1982.

Decided Nov. 30, 1982.

Hugh H. Braun, Godfrey & Trump, Milwaukee, Wis., for plaintiffs-appellants.

Thomas O. Gartner, Asst. City Atty., Milwaukee, Wis., for defendants-appellees.

Before CUMMINGS, Chief Judge, and SPRECHER * and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

The plaintiffs, homeowners in the City of Milwaukee, Wisconsin, brought this action under 42 U.S.C. § 1983 against the City of Milwaukee and Dr. Constantine Panagis, in his official capacity as Commissioner of the Department of Health ("the Department"). Plaintiffs alleged the Department's decision to grant the Lindner Brothers Trucking Company ("Lindner Brothers"), an adjacent business, a permanent variance from the municipal noise ordinance violated their rights under the Fourteenth Amendment. The plaintiffs claimed the decision was arbitrary and capricious, was made without providing them an opportunity to be heard, and deprived them of property without just compensation. The district court granted the defendants' motion for summary judgment and dismissed the action. The plaintiffs appeal that determination.

## I.

Because the district court granted the defendants' motion for summary judgment, we accept the plaintiffs' factual allegations as true and resolve any other genuine issues of material fact in their favor. Fed.R. Civ.P. 56(c); *Bishop v. Wood,* 426 U.S. 341, 347 & n. 11, 96 S.Ct. 2074, 2079 & n. 11, 48 L.Ed.2d 684 (1976); *DiIulio v. Board of Fire and Police Commissioners of the City of Northlake,* 682 F.2d 666 at 667 (7th Cir. 1982).

The plaintiffs, James and Joan Barbian, husband and wife, own and reside in a single family dwelling in the City of Milwaukee. Since 1955, their lot has been zoned exclusively for residential use. However, a tract of land immediately adjacent to the rear of the Barbian lot was zoned for industrial or light manufacturing purposes. The Lindner Brothers Trucking Company

---

* Circuit Judge Robert A. Sprecher heard oral argument, participated in the conference which followed, and voted to affirm. He died May 15, 1982, and did not participate in the preparation or approval of this opinion.

constructed a warehouse on that tract. The problem arose because access to the Lindner warehouse could be accomplished only by the use of a 100-foot wide strip also owned by Lindner Brothers, that extended from the warehouse tract along the side of the Barbian lot to the public street passing in front of the Barbian lot.

During construction of the warehouse, Lindner Brothers laid an asphalt driveway over the narrow strip, although it was zoned only for residential use, to allow construction vehicles and its semi-trailer trucks access to the warehouse. As a result, approximately forty semi-trailer trucks used the access road passing within fifteen feet of the Barbian home daily.

In August, 1976, the plaintiffs complained to the City of Milwaukee Building Inspector that the use of the access road by construction vehicles and Lindner Brothers' trucks for non-residential purposes violated the municipal zoning ordinance. Though an official at the Building Inspector's office initially issued an order halting construction of the warehouse, that agency rescinded the order four days later with the explanation that use of the access strip for industrial traffic was a legal non-conforming use. The Barbians then filed an action in state court challenging that administrative determination. However, in July, 1977, before the state court considered the question, the City of Milwaukee Common Council enacted a measure rezoning the access strip from "residential" to "industrial."

The Barbians next filed an action for declaratory judgment in state court, alleging the rezoning decision violated state law and was an unconstitutional exercise of the municipal police power. The state court rejected those arguments. Evidence adduced, however, indicated that the noise generated by the trucks exceeded fifty-five decibels and, consequently, violated the municipal noise ordinance. Armed with that information, the Barbians requested that the Milwaukee Department of Health enforce the noise ordinance.

The Department conducted sound tests which confirmed that the truck noise ex-

ceeded the maximum level permitted under the ordinance. After a year during which considerable negotiating between the parties occurred, the Department of Health granted Lindner Brothers a permanent variance from the noise ordinance. The plaintiffs appealed that decision to the City of Milwaukee Administrative Review Board. Concluding that it lacked jurisdiction, the Administrative Review Board declined to consider the issue and dismissed the appeal.

The Barbians then filed this action under Section 1983, alleging that the Common Council's access strip rezoning decision and the Department of Health's grant of a permanent variance from the noise ordinance violated the Due Process Clause of the Fourteenth Amendment. The Barbians specifically alleged that because the trucks passed their house during all hours, day and night, the noise from the traffic disrupted their sleep, interfered with use of their property, and rendered their home uninhabitable. It was further alleged that the size and number of vehicles increased the danger of physical injury to all residents in the neighborhood and had a debilitating emotional and physical effect on the plaintiffs personally.

The district court granted the defendants' motion for summary judgment on both the rezoning and noise issues. The district court concluded that because the plaintiffs had previously litigated in state court the issues pertaining to the rezoning decision, the doctrine of *res judicata* prevented relitigation of the same issues in federal court. The plaintiffs do not appeal that part of the decision. On the noise variance, the district court concluded that the Department had not deprived the plaintiffs of property without due process of law, did not "take" the plaintiffs' property without providing just compensation, and that the elemental notions of procedural due process had not been disregarded. The plaintiffs contest those conclusions.

## II.

The plaintiffs first claim the Department's noise variance decision was arbitrary

and capricious and, consequently, deprived them of property without due process of law since its sound tests conclusively demonstrated that the noise level exceeded by at least twenty-five decibels the maximum level permitted in residential neighborhoods. The plaintiffs contend the extreme disparity between that level and the maximum level set in the ordinance, combined with the lengthy delay which occurred before the Department acted upon their complaint, demonstrates the decision was arbitrary and capricious.

 An action under Section 1983 does not provide a property owner a collateral forum in which to question the merits of a municipal agency's administration of a local noise ordinance, but is limited to whether or not the Department's decision was arbitrary and capricious and thereby deprived plaintiffs of their property. "[T]he guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the objective sought to be attained." *Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 84–85, 100 S.Ct. 2035, 2042–2043, 64 L.Ed.2d 741 (1980), *quoting Nebbia v. New York,* 291 U.S. 502, 523, 54 S.Ct. 505, 78 L.Ed. 940 (1934); *see also State ex rel. Schleck v. Zoning Board of Appeals,* 254 Wis. 42, 52, 35 N.W.2d 312 (1948); *Snyder v. Waukesha County Zoning Board of Adjustment,* 74 Wis.2d 468, 476, 247 N.W.2d 98, 103 (1976). Moreover, the administration of the noise ordinance, as an exercise of the local police power, *Kovacs v. Cooper,* 336 U.S. 77, 83, 69 S.Ct. 448, 451, 93 L.Ed. 513 (1949), is presumed to be reasonable. The burden rests with the party alleging the decision was arbitrary to rebut that presumption. *Goldblatt v. Hempstead,* 369 U.S. 590, 595–96, 82 S.Ct. 987, 990–991, 8 L.Ed.2d 130 (1962).

The rezoning of the access strip from a residential to an industrial classification occurred in 1977. Amending the zoning classification was a determination that the permanent disruption to the Barbians' neighborhood did not outweigh the benefits to the general community from the establishment of the warehouse. Further, it was a determination that there would be serious injury to Lindner Brothers if the company could not use its warehouse tract for the legitimate purpose for which it was zoned. The truck noise was not considered a sufficient factor to deny altering the zoning classification of the access property to industrial.

When the state court attack on the rezoning failed, the Barbians challenged the disruption of their neighborhood environment under the noise ordinance. Faced with essentially the same issue presented to the Common Council, the Department suspended enforcement of the noise ordinance in order to effectuate the previous Common Council decision allowing access to the landlocked warehouse. A City of Milwaukee Development Organization study conclusively showed that development of an alternative access route was not feasible. Strict enforcement of the noise ordinance would have prevented access and nullified the Common Council zoning change already determined to be valid.

The Department, moreover, was not unresponsive to the Barbians' concerns. The noise variance was not unconditional. The Department imposed several limitations on the Lindner Brothers' use of its access strip requiring affirmative steps to reduce the noise. The district court found that the conditions had been substantially met.[1] Further, the Department reserved the authority to revoke the variance if Lindner

1. The plaintiffs alleged in their complaint that all conditions had not been met and the Department acted arbitrarily in failing to revoke the variance on that basis. The district court found that Lindner Brothers had complied with all but one condition. Lindner Brothers had challenged, in state court, the Department's authority to impose that particular condition which required Lindner Brothers to relocate the driveway on the access strip further from Barbians' line. The Department did not act arbitrarily in refusing to revoke the variance before the state courts resolved the question of whether it actually had authority to impose that one condition.

Brothers failed to adhere to the conditions of the variance or if some other access to the warehouse eventually became available. In addition, the City of Milwaukee, with Lindner Brothers' cooperation, erected a barricade closing the road after business hours and on weekends to all traffic, including Lindner Brothers trucks.

■ The Milwaukee noise ordinance vests authority in the Department to grant variances from the general application of the ordinance.[2] A variance permits an individual to use his property in a manner which an ordinance, literally enforced, would otherwise prohibit. *Eastlake v. Forest City Enterprises, Inc.*, 426 U.S. 668, 679 n. 13, 96 S.Ct. 2358, 2365 n. 13, 49 L.Ed.2d 132 (1976). Intended to meet situations that cannot be resolved in advance by ordinance, a variance relieves individual property owners from the harsh, unintended, or unforeseeable consequences of rigid enforcement. *State ex rel. Skelly Oil Co. v. Common Council, Delafield,* 58 Wis.2d 695, 701, 207 N.W.2d 585, 587 (1973). By necessity, therefore, the standards for granting a variance are flexible and considerable discretion vests in local officials administering the ordinance. Under Wisconsin law, an administrative decision to grant a variance is presumed correct and is to be set aside only for an abuse of discretion. *Snyder,* 74 Wis.2d at 476, 247 N.W.2d at 103.

■ Considering the investment in the large warehouse and trucking business, Lindner Brothers' need to use the particular access strip, and the required noise abatement conditions, the conclusion that strict enforcement of the noise ordinance would produce a severe and harsh result was neither unreasonable nor arbitrary. We agree with the district court that it was inevitable

that the principal tract of land would be developed and that the Barbians' property would be affected. Nor was it unexpected that the access strip would probably be necessary to reach the industrial tract. For two decades the local railroad had intermittently used the access strip to reach its tracks bordering the back of the industrial tract. The warehouse was already constructed and in operation when the Barbians first complained of the noise ordinance violations. In light of all the circumstances, the Department did not unreasonably conclude that substantial hardships would result from the strict enforcement of the noise ordinance and that a variance was necessary.

■ Finally, the plaintiffs argue that the effect of the noise ordinance and the lack of alternative access to the property were factors which Lindner Brothers should have considered before constructing the warehouse. Under Wisconsin law, a hardship created either from ignorance or deliberate disregard of existing land use ordinances does not justify granting a variance. *State ex rel. Markdale Corp. v. Board of Appeals,* 27 Wis.2d 154, 159, 133 N.W.2d 795, 797 (1965); *Snyder,* 74 Wis.2d at 476, 247 N.W.2d at 103. A "variance [cannot] be sustained on the ground of hardship [when] the hardship was occasioned solely by the property owners' reckless conduct." *Markdale,* 27 Wis.2d at 160, 133 N.W.2d at 798 (discussing *Misuk v. Zoning Board of Appeals,* 138 Conn. 477, 86 A.2d 180 (1952)). However, we need not consider whether the decision to grant the variance was correct as a matter of state law.

A Section 1983 cause of action does not provide the Barbians a federal forum in

---

**2.** In pertinent part, the noise ordinance, Milwaukee, Wis., Ordinance 129, § 80–66(2)(a) (Aug. 10, 1973), provides:

Variance permits may be issued by the commissioner of health to exceed the noise standards set forth in this ordinance as follows:

\* \* \* \* \* \*

(2) VARIANCE PERMITS OF INDEFINITE DURATION. (a) It is recognized that it is not technically or economically feasible for certain business operations and equipment to comply with the standards set forth herein as of the date of this ordinance. The Commissioner of health shall therefore issue a variance permit on existing business operations and equipment which produces excessive noise if it is found that it is not technically or economically feasible to alter such operation to reduce noise to within the prescribed standards set forth in this ordinance.

which to contest the merits of a local administrative determination. The record indicates that the Barbians did not challenge the Department's noise decision in state court. That decision may be set aside under the Fourteenth Amendment only if it was arbitrary and capricious. *Pruneyard Shopping Center,* 447 U.S. at 84–85, 100 S.Ct. at 2042–2043. While Lindner Brothers' responsibility for a share of the problem may be one relevant factor, there are obviously other aspects to be considered.[3] The Department's decision to grant the variance was not an unconstitutionally arbitrary solution to the dilemma solely because Lindner Brothers may have overlooked or even ignored the noise ordinance in building the warehouse.

### III.

The Barbians argue that the Department's decision to grant the noise variance rendered their home uninhabitable, contending that since the City of Milwaukee provided no compensation for the diminished value of their property, the Department's action violated the Taking Clause of the Fifth Amendment. The Fifth Amendment provides that "private property" shall not "be taken for public use, without just compensation."[4]

█ Although the Department's decision was neither arbitrary nor capricious, that fact does not resolve the separate issue of whether the Taking Clause required the City of Milwaukee to compensate the plaintiffs for the burdens the variance imposed upon them. *Loretto v. Teleprompter Manhattan CATV Corp.,* —— U.S. ——, ——, 102 S.Ct. 3164, 3170, 73 L.Ed.2d 868 (1982); *San Diego Gas & Electric Co. v. San Diego,* 450 U.S. 621, 646–50, 101 S.Ct. 1287, 1301–1303, 67 L.Ed.2d 551 (Brennan, J., *dissenting*).[5] Legitimate government action which places a burden on one individual that in fairness the entire community should share constitutes a taking and the government must compensate the property owner for his loss.[6] *Pruneyard Shopping*

---

**3.** In the final analysis, a decision to grant a variance reflects

> a conclusion that the overall benefit to the community outweighs the annoyance to the neighborhood affected.... [T]he considerations involved in the determination of what uses or structures to allow in an area [are not] limited to the nuisance impact that they will have upon their immediate neighbors. An industrial plant, besides producing too much noise for the comfort of those living near it, may produce too much traffic for the dimensions of the local roads. At least one relevant question, therefore, is whether the increased tax revenues justify the expense of widening the roads. Even the nuisance aspect cannot escape this sort of question. Are the tax revenues sufficiently important to the good of the whole community that a few members of that community should live near a source of discomforting noise? Each application for a building permit that raises this sort of question requires a response based both on technical judgments as to the impact of the proposed use on the area and on policy judgments as to the kind of community most of its residents want. Ideally, appeal boards should have access to experts who could assess the amount of smoke, traffic, or noise a particular plan would produce. The board itself should be politically responsive to ensure that community interests are not sacrificed to private profit.

Note, *Administrative Discretion in Zoning,* 82 Harv.L.Rev. 668, 673–74 (1969).

**4.** U.S. Const.amend. V. The Fifth Amendment has been incorporated into the Fourteenth Amendment and is, therefore, binding on state and local governments. *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 122, 98 S.Ct. 2646, 2658, 57 L.Ed.2d 631 (1978).

**5.** In *San Diego Gas & Electric Co. v. City of San Diego,* 450 U.S. 621, 101 S.Ct. 1287, 67 L.Ed.2d 551 (1981), the Court declined to reach the merits of the Taking Clause question, holding that the lower court decision was not an appealable final judgment. Justice Brennan, along with three other members of the Court, dissented and addressed the merits. Justice Rehnquist concurred specifically in the majority opinion, but also expressly accepted the dissent's position on the merits. *San Diego Gas,* 450 U.S. at 633–34, 101 S.Ct. at 1294–95 (Rehnquist, J., *concurring*). Thus, on the Taking Clause question, the dissent in *San Diego Gas* reflects the view of a majority of the Court. *See Devines v. Maier,* 665 F.2d 138, 142 (7th Cir.1981).

**6.** The government need not invoke the formal power of eminent domain to confiscate property for public use. *United States v. Clarke,* 445 U.S. 253, 257, 100 S.Ct. 1127–1130, 63 L.Ed.2d 373 (1980); *Kaiser Aetna v. United States,* 444

*Center,* 447 U.S. at 83, 100 S.Ct. at 2041; *Goldblatt,* 369 U.S. at 594, 82 S.Ct. at 990; *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922). The ultimate resolution of whether the government has unconstitutionally taken private property follows an ad hoc factual determination that the full community, rather than an individual property owner, should fairly assume the costs of the governmental action. *Loretto,* —— U.S. at ——, 102 S.Ct. at 3170; *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 123–24, 98 S.Ct. 2646, 2658–2659, 57 L.Ed.2d 631 (1978).

■ The Lindner Brothers argue, however, that the Barbians did not allege a deprivation of "property" under the Fourteenth Amendment. Lindner Brothers also assert that the plaintiffs lack a property interest in the enforcement of the noise ordinance and, as a result, may not sue under Section 1983 to require its enforcement. The definition of "property" under the Fifth Amendment, however, is not narrowly limited and applies to rights in the use of property as well as the title to it. *Kaiser Aetna v. United States,* 444 U.S. 164, 178 n. 8, 100 S.Ct. 383, 392 n. 8, 62 L.Ed.2d 332 (1979).

> [T]he Court has frequently emphasized that the term "property" as used in the Taking Clause includes the entire "group of rights inhering in the citizen's [owner-

U.S. 164, 178 n. 8, 100 S.Ct. 383, 392 n. 8, 62 L.Ed.2d 332 (1979). The government may deny an owner dominion over his property simply by restricting its use.

> Police power regulations such as zoning ordinances and other land-use restrictions can destroy the use and enjoyment of property in order to promote the public good just as effectively as formal condemnation or physical invasion of property. From the property owner's point of view, it may matter little whether his land is condemned ... or whether it is restricted by regulation to use in its natural state, if the effect in both cases is to deprive him of all beneficial use of it. From the government's point of view, the benefits flowing to the public from preservation of open space through regulations may be equally great as from creating a wildlife refuge through formal condemnation....

ship]." *United States v. General Motors Corp.,* 323 U.S. 373 [65 S.Ct. 357, 89 L.Ed. 311] (1945). The term is not used in the "vulgar and untechnical sense of the physical thing with respect to which the citizen exercises rights recognized by law. [Instead, it] ... denote[s] the *group of rights* inhering in the citizen's relation to the physical thing, *as the right to possess, use and dispose of it....* The constitutional provision is addressed to *every sort of interest* the citizen may possess." *Id.,* at 377–78 [65 S.Ct. at 359–360].

*Penn Central Transportation,* 438 U.S. at 142–43, 98 S.Ct. at 2668–69 (Rehnquist, J., *dissenting*); *see also Pruneyard Shopping Center,* 447 U.S. at 82 n. 6, 100 S.Ct. at 2041 n. 6.

The district court did not expressly consider this argument, and it is not apparent from the record that the defendants advanced it below. The Barbians alleged that since the Department granted the variance the noise and volume of the trucks have made their home uninhabitable. The plaintiffs claimed to have lost the opportunity to sleep peacefully at night and relax during the day, that the increased traffic has endangered children playing in their yard, and that the market value of their home had therefore fallen. The Court has held that the Fifth Amendment requires the compensation of affected homeowners when government action produces similar inju-

*San Diego Gas,* 450 U.S. at 652, 101 S.Ct. at 1304 (Brennan, J., *dissenting*). Thus, because the City of Milwaukee had allegedly taken their property by regulation rather than through condemnation proceedings, the plaintiffs filed this action to recover damages for the "inverse condemnation" of their property.

> As defined by one land use planning expert, "[i]nverse condemnation is '*a cause of action against a governmental defendant* to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency.'" D. Hagman, Urban Planning and Land Development Control Law 328 (1971).

*Clarke,* 445 U.S. at 257, 100 S.Ct. at 1130 (emphasis in original); *see also Illinois v. Kerr-McGee Chemical Corp.,* 677 F.2d 571 (7th Cir. 1982).

ries. *See, e.g., United States v. Causby,* 328 U.S. 256, 266, 66 S.Ct. 1062, 1068, 90 L.Ed. 1206 (1946); *Griggs v. Allegheny County,* 369 U.S. 84, 87, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962). *But see Richards v. Washington Terminal Co.,* 233 U.S. 546, 553, 34 S.Ct. 654, 657, 58 L.Ed. 1088 (1914). The injury alleged here resembles the injury in *Griggs v. Allegheny County,* where the plaintiffs alleged that because a local government constructed an airport near their home, regular overhead airplane flights made it:

> impossible for people in the house to converse or to talk on the telephone. The plaintiff and the members of his household . . . were frequently unable to sleep even with ear plugs and sleeping pills; they would frequently be awakened by the flight and the noise of the planes; the windows of their home would frequently rattle and at times plaster fell down from the walls and ceilings; their health was affected and impaired, and they sometimes were compelled to sleep elsewhere. Moreover, their house was so close to the runways or path of glide that as the spokesman for the members of the Airlines Pilot Association admitted "If we had engine failure we would have no course but to plow into your house."

369 U.S. at 87, 82 S.Ct. at 532 (1962) (quoting *Griggs v. Allegheny,* 402 Pa. 411, 422, 168 A.2d 123, 128–29 (1961) (Bell, J., *dissenting*)).

■ However, while the plaintiffs sufficiently alleged a deprivation of "property" under the Fifth Amendment, the fact that government action severely burdens a particular parcel of land does not necessarily indicate that a taking has occurred. *Penn Central Transportation,* 438 U.S. at 133, 98 S.Ct. at 2663; *Miller v. Schoene,* 276 U.S. 272, 48 S.Ct. 246, 72 L.Ed. 568 (1928); *Hadacheck v. Sebastian,* 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915). "[N]ot every destruction or injury to property by government action has been held to be a 'taking' in the constitutional sense." *Armstrong v. United States,* 364 U.S. 40, 48, 80 S.Ct. 1563, 1568, 4 L.Ed.2d 1554 (1960); *see also Pruneyard Shopping Center,* 447 U.S. at 82, 100 S.Ct. at 2041.

■ In *Goldblatt v. Hempstead,* 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962), a local ordinance prohibiting drilling below the water table caused an eighty percent decline in the market value of the plaintiff's quarry. Despite the severe and disproportionate impact of the ordinance on the plaintiff, the Supreme Court held no confiscation had occurred.

> Concededly the ordinance completely prohibits a beneficial use to which the property has previously been devoted. However, such a characterization does not tell us whether or not the ordinance is unconstitutional. It is an oft-repeated truism that every regulation necessarily speaks as a prohibition. If this ordinance is otherwise a valid exercise of the town's police powers, the fact that it deprives the property of its most beneficial use does not render it unconstitutional.

369 U.S. at 592, 82 S.Ct. at 988. Rather than merely prevent the most beneficial use, government action must deny an individual "all" or an "essential" use of his property before a confiscation occurs. *Pruneyard Shopping Center,* 447 U.S. at 84, 100 S.Ct. at 2042; *Causby,* 328 U.S. at 262, 66 S.Ct. at 1066; *Curtin v. Benson,* 222 U.S. 78, 86, 32 S.Ct. 31, 32, 56 L.Ed. 102 (1911). A property owner must establish that the right lost was "so essential to the use or economic value of [the] property that [a] state-authorized limitation of it amounted to a 'taking.'" *Pruneyard Shopping Center,* 447 U.S. at 84, 100 S.Ct. at 2042. A decline in market value, *Goldblatt,* 369 U.S. at 592, 82 S.Ct. at 988, or the loss of the best or most profitable use of the property, *Andrus v. Allard,* 444 U.S. 51, 66, 100 S.Ct. 318, 327, 62 L.Ed.2d 210 (1979); *United States v. Central Eureka Mining Co.,* 357 U.S. 155, 168, 78 S.Ct. 1097, 1104, 2 L.Ed.2d 1228 (1958); *contra, Agins v. Tiburon,* 447 U.S. 255, 262, 100 S.Ct. 2138, 2142, 65 L.Ed.2d 106 (1980), does not conclusively demonstrate that a taking has occurred. Although government action may so severely impair an individual's use of his property that it effects a taking even though the

property ostensibly remains under the owner's control, the fact that the owner has suffered a serious hardship begins rather than ends the analysis. *United States v. Willow River Power Co.,* 324 U.S. 499, 510, 65 S.Ct. 761, 767, 89 L.Ed. 1101 (1945) (Roberts, J., *dissenting*).

■ The resolution of the question also depends upon the economic impact of the intrusion, *Loretto,* —— U.S. at ——, 102 S.Ct. at 3171, the degree of interference with investment-backed expectations, *Penn Central Transportation,* 438 U.S. at 124, 98 S.Ct. at 2659, *Goldblatt,* 369 U.S. at 594, 82 S.Ct. at 990, and the physical rather than purely regulatory nature of the invasion, *Loretto,* —— U.S. at ——, 102 S.Ct. at 3171. The Supreme Court, in considering these factors, has recognized that none is necessarily paramount. *See, e.g., Pruneyard Shopping Center,* 447 U.S. at 84, 100 S.Ct. at 2042 (physical intrusion not determinative); *Goldblatt,* 369 U.S. at 594, 82 S.Ct. at 990 (eighty percent diminution in property value not determinative); *cf. Loretto,* —— U.S. at ——, 102 S.Ct. at 3172 (permanent physical occupation is determinative). It is recognized that all

> government regulation ... involves the adjustment of rights for the public good. Often this adjustment curtails some potential for the use or economic exploitation of private property. To require compensation in all such circumstances would effectively compel the government to regulate by *purchase.* "Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law."

*Andrus v. Allard,* 444 U.S. at 65, 100 S.Ct. at 326 (quoting *Pennsylvania Coal,* 260 U.S. at 413, 43 S.Ct. at 159). These factors control the determination of the question.

■ The Fifth Amendment does not require the City of Milwaukee to compensate the Barbians for alleged damage which the Lindner Brothers trucks caused. The Supreme Court has never construed the Taking Clause to require the socialization of losses resulting from antagonistic uses of private property by neighboring landowners. *See Miller v. Schoene,* 276 U.S. at 279, 48 S.Ct. at 247. The Barbian home bordered an area the City had zoned for industrial use. It was inevitable that the industrial zoned tract would eventually be developed and that some accommodation would need to be reached between the conflicting uses of the different types of property in the area. Rezoning the access tract to conform with the industrial tract it served was one accommodation and granting a variance to the noise ordinance for the same tract was another. While those actions may have contributed to the change in the character of the neighborhood, they were well within the City's authority to undertake.[7] *See Belle Terre v. Boraas,* 416 U.S. 1, 5, 94 S.Ct. 1536, 1539, 39 L.Ed.2d 797 (1974).

The City of Milwaukee has wide discretion in developing and implementing a plan for a better balanced and more attractive community. *Belle Terre v. Boraas,* 416 U.S. 1, 5, 9, 94 S.Ct. 1536, 1539, 1541, 39 L.Ed.2d 797 (1974); *Berman v. Parker,* 348 U.S. 26, 33, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954). Only when government regulation "goes too far" in depriving an owner of the use of

---

**7.** The noise ordinance was passed under the local police power. *Belle Terre v. Boraas,* 416 U.S. 1, 9, 94 S.Ct. 1536, 1541, 39 L.Ed.2d 797 (1973); *Grayned v. Rockford,* 408 U.S. 104, 116, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972); *Kovacs v. Cooper,* 336 U.S. 77, 82–83, 69 S.Ct. 448, 451–452, 93 L.Ed. 513 (1949); *accord, Agins v. Tiburon,* 447 U.S. 255, 261 & n. 8, 100 S.Ct. 2138, 2142 & n. 8, 65 L.Ed.2d 106 (1980). Though the Supreme Court has held in past decisions, *Mugler v. Kansas,* 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887), that an exercise of the police power may never amount to a taking, the Court has retreated from that prin-

ciple in more recent decisions. *See San Diego Gas & Electric Co. v. City of San Diego,* 450 U.S. 621, 101 S.Ct. 1287, 67 L.Ed.2d 551 (1981); *Agins v. City of Tiburon,* 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980); *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922). Thus, while the Department of Health unquestionably acted under the local police power and while that fact alone might under past precedents justify the conclusion that no taking had occurred, that rationale, standing alone, no longer adequately resolves the issue.

his property does the Constitution require the government to compensate that individual for his loss. *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922). Consequently, the Supreme Court held in *Goldblatt,* 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 and *Hadacheck v. Sebastian,* 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915), that the Fifth Amendment did not require a municipality to compensate property owners when local ordinances prohibited continued operation of existing businesses—a quarry in *Goldblatt* and a brickyard in *Hadacheck*—because those businesses disrupted the surrounding residential neighborhood. Conversely, the Fifth Amendment does not require the payment of compensation to residential property owners when, administering a land use ordinance, the City declines to prohibit a local business from using its warehouse and its trucks in a manner which interferes with the plaintiffs' full enjoyment of their home. The Barbians' allegations that the noise from the trucks has severely disturbed the quiet in the neighborhood are presumed to be true. *Bishop v. Wood,* 426 U.S. 341, 347, 96 S.Ct. 2074, 2078, 48 L.Ed.2d 684 (1976). Yet, however significant and disagreeable to the Barbians, the change in the neighborhood was inherent to life in a large, urban community. The Fifth Amendment does not insulate homeowners from bearing the cost of urban change, *see Hadacheck,* 239 U.S. at 410, 36 S.Ct. at 145, simply because the City of Milwaukee may have facilitated the transformation through the administration of the noise ordinance.[8] The Supreme Court decided a similar question in *Richards v. Washington Terminal Co.,* 233 U.S. 546, 34 S.Ct. 654, 58 L.Ed. 1088 (1914). *See Euclid v. Ambler Realty Co.,* 272 U.S. 365, 394–95, 47 S.Ct. 114, 120–121, 71 L.Ed. 303 (1926).

In some later decisions in different circumstances the Court has held that the Taking Clause requires compensation when noise produced from the government's use of its own property "in an enterprise capacity," *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 135, 98 S.Ct. 2646, 2664, 57 L.Ed.2d 631 (1978), severely impaired a neighboring property owner's use of his land. In *Causby* and *Griggs,* it was held that the Fifth Amendment required the payment of compensation where noise produced from airplanes landing at and departing from government-operated airports denied neighboring landowners all viable use of their property. Similarly, in *Portsmouth Harbor Land & Hotel Co. v. United States,* 260 U.S. 327, 43 S.Ct. 135, 67 L.Ed. 287 (1922), the Court held the Fifth Amendment required the United States to compensate a resort owner when the periodic firing of artillery shells over his prop-

---

8. A municipality does not "take" private property in derogation of the Fifth Amendment solely because it has declined to regulate loud or excessive noise in a particular neighborhood. The Supreme Court held in *Transportation Co. v. Chicago,* that some injuries directly produced by government action are "consequential" and to be borne by affected property owners without compensation from the state.

> [A]cts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision. They do not entitle the owner of such property to compensation from the State or its agents, or give him any right of action.

99 U.S. 635, 642, 25 L.Ed. 336 (1879); *see also Peabody v. United States,* 231 U.S. 530, 538, 34 S.Ct. 159, 160, 58 L.Ed. 351 (1913); *see generally* J. Sackman, Nichols on Eminent Domain, § 6.4432 (rev. 3rd ed. 1981) (hereinafter "Nich-

ols"). Noise and other discomforts produced from a municipality's regulation of its streets is one example of such an injury. *Accord United States v. Causby,* 328 U.S. 256, 269–70, 66 S.Ct. 1062, 1069–1070, 90 L.Ed. 1206 (Black, J., *dissenting*). Thus, an increase in traffic resulting from an expansion of a road does not entitle an adjoining property owner, whose property has not been physically invaded or formally condemned, to compensation for injury from the noise, congestion, and other dislocations produced by the change. *Nichols,* § 16.101[2] at 16–13; *accord Stanwood v. Malden,* 157 Mass. 17, 31 N.E. 702 (1892) (Holmes, J.). Holding that the injury here is compensable because the municipality increased the flow of traffic past the plaintiffs' home by granting a variance to the noise ordinance rather than by physically expanding the road would be logically inconsistent. Under either circumstance, the injury is consequential and not compensable under the Taking Clause.

erty from a neighboring military base destroyed his business. Unlike *Griggs, Causby,* and *Portsmouth Harbor,* it was not the operation and maintenance of government property that produced the noise causing the plaintiffs' injury.

### IV.

As a final matter, the plaintiffs assert that the Department abrogated their right to procedural due process under the Fourteenth Amendment because it granted the variance without first holding a formal hearing. The district court originally granted the defendant's summary judgment motion and dismissed the complaint without considering this issue. The plaintiffs, however, filed a motion petitioning the district court to reconsider its decision, claiming the court had ignored the "central" issue in the case—whether the plaintiffs had been denied the right to procedural due process. The district court rejected the plaintiff's argument on two grounds.

The court found that the plaintiffs had failed to allege a deprivation of procedural due process rights in their complaint and, consequently, the question was never presented for consideration. A review of the complaint reveals that it makes no reference to any deficiency in procedure. The plaintiffs did not allege that the Department's decision was made without a hearing, that the plaintiffs were entitled to a hearing under Wisconsin law, *see* Wis.Stat. 68.10, or that the Department's variance unconstitutionally deprived them of their right to procedural fairness.

■■■ The plaintiffs' minimal responsibilities in pleading under the Federal Rules of Civil Procedure are well-settled. *Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99,

102–103, 2 L.Ed.2d 80 (1957). The complaint does not even remotely allege an unconstitutional deficiency in the Department's procedures.[9]

The district court also concluded that plaintiffs had not been deprived of a fair opportunity to be heard on the merits of their grievance in light of the Department's substantial efforts to accommodate the Barbians. Over the lengthy period of time during which the Barbians' complaint was pending, the Department and Lindner Brothers made substantial efforts to confer and to mediate the controversy to monitor the noise abatement measures imposed on Lindner Brothers. Lindner Brothers, for example, offered to purchase the Barbians home and to erect a concrete wall as a barrier to shield the neighborhood from noise generated by its trucks. Negotiations were unsuccessful.

■■■ Plaintiffs claim they were entitled, nevertheless, to a formal evidentiary hearing. *See Dixon v. Love,* 431 U.S. 105, 112, 97 S.Ct. 1723, 1727, 52 L.Ed.2d 172 (1977); *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). None was either requested or provided. The plaintiffs appealed the Department's decision to the City of Milwaukee Administrative Review Appeals Board, where they then contended that Wis. Stats. §§ 68.10, 68.11 entitled them to a formal hearing. The Board, however, dismissed the appeal for lack of jurisdiction. While the plaintiffs contend that that action was incorrect as a matter of state law, they did not appeal that decision in the state courts before filing this claim under Section 1983.

The volume and pressure of the district court's caseload does not allow the court the luxury of elaborate speculations about the nature of a plaintiffs' claim. Although the district court must construe the complaint liberally on a motion for summary judgment, the court is not required to redraft the document or to refuse to dismiss the action because the plaintiffs may, theoretically, be entitled to recover under a body of facts never alleged in the complaint.

---

**9.** In an affidavit from the plaintiffs' counsel opposing the summary judgment motion, the plaintiffs asserted that the variance had been granted without a hearing. Even then the significance of that fact was not indicated. In context, the assertion was part of a detailed chronology of the events preceding the present action. There is no indication in the affidavit or elsewhere that the plaintiffs believed they had been denied an opportunity to fairly present their grievance to the Department.

It is well-settled that when the state deprives an individual of a recognized property right, the government must provide the individual an opportunity to be heard before, or in some cases after, the deprivation occurs. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1153, 71 L.Ed.2d 265 (1982). While the opportunity must be granted "at a meaningful time and in a meaningful manner," *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Logan,* 455 U.S. at 435, 102 S.Ct. at 1157, the Court has never held that a formal evidentiary hearing must occur where it would be purposeless for the state to provide one. *See Ingraham v. Wright,* 430 U.S. 651, 680, 97 S.Ct. 1401, 1417, 51 L.Ed.2d 711 (1977); *Mathews,* 424 U.S. at 339–49, 96 S.Ct. at 904–909. While under the Due Process Clause at least "*some* form of hearing" is required before the owner is finally deprived of a protected property interest, *Board of Regents v. Roth,* 408 U.S. 564, 570–71 n. 8, 92 S.Ct. 2701, 2705–06 n. 8, 33 L.Ed.2d 548 (1972) (emphasis in original); *see also Logan,* 455 U.S. at 433, 102 S.Ct. at 1156; *Parratt v. Taylor,* 451 U.S. 527, 540, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981); *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 16, 98 S.Ct. 1554, 1564, 56 L.Ed.2d 30 (1978), that hearing only need take a form "appropriate to the nature of the case," *Mullane,* 339 U.S. at 313, 70 S.Ct. at 656; *see also Logan,* 455 U.S. at 434, 102 S.Ct. at 1157. Thus, the Court held in *Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 883, 51 L.Ed.2d 92 (1977), that a grievant need not be provided any opportunity to present evidence to support his arguments, when the essential facts surrounding the dispute had been previously resolved. In *Codd,* the plaintiff, a policeman discharged from the New York City police force, did not dispute the facts underlying his termination. The plaintiff complained only that the City had provided him no formal hearing before deciding to discharge him. The Court ruled in *Codd,* 429 U.S. at 627, 97 S.Ct. at 883, "if the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged employee which has some significant bearing on the [issue to be resolved]."

In the present case, the facts underlying the Department's decision had been extensively litigated and conclusively resolved at trial in the plaintiffs' state court challenge to the Common Council rezoning decision. The plaintiffs do not contend that, given the opportunity, they could have presented new or additional evidence to dispute those findings. The Due Process Clause does not require that the plaintiffs be permitted to repeat the presentation of evidence which was previously fully litigated at trial by the parties. *Cf. United States v. Raddatz,* 447 U.S. 667, 680, 100 S.Ct. 2406, 2414, 65 L.Ed.2d 424 (1980).

One significant difference exists, however, between *Codd v. Velger* and the instant case. In *Codd v. Velger* the plaintiff had been deprived of an opportunity to appear personally before the Department and to argue that, despite the infraction, he should not be discharged. 429 U.S. at 627, 97 S.Ct. at 883. The Court found that deprivation insubstantial because, as a probationary employee, the plaintiff lacked any property interest recognized by state law in continued employment. 429 U.S. at 628, 97 S.Ct. at 884. The plaintiffs herein, though not afforded a formal hearing, were represented by legal counsel at all stages while they and the Department considered their complaint. They had ample opportunity in the numerous communications between their counsel and the Department to advocate a rejection of Lindner Brothers' request for a variance and to otherwise articulate the reasons supporting their views. The plaintiffs' right to a fair and adequate opportunity to be heard in these circumstances required no more.[10]

AFFIRMED.

---

10. We need not consider the defendants' argument, based upon the Supreme Court decision

in *O'Bannon v. Town Court Nursing Center,*

447 U.S. 773, 778, 100 S.Ct. 2467, 2471, 65 L.Ed.2d 506 (1980), that the plaintiffs' inhabitation of their home in a noise-free setting is too remote an interest to require a formal hearing when the Department adjudicates a third party's request for a variance from the noise ordinance. Lindner Brothers argue that the enforcement of the noise ordinance against Lindner Brothers concerned only Lindner Brothers and the Department. The argument ignores the fact that any grant of a variance would significantly affect the plaintiffs' use of their property. The Supreme Court has upheld a local ordinance requiring a party intending to introduce a nuisance into a neighborhood to first obtain written consent from a majority of the residents of the affected community before taking that action. *Thomas Cusack Co. v. Chicago,* 242 U.S. 526, 37 S.Ct. 190, 61 L.Ed. 472 (1917) (erection of billboard); *cf. Eastlake v.*

*Forest City Enterprises, Inc.,* 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976) (city may condition rezoning of particular parcel on approval city-wide referendum). *But cf. Washington ex rel. Seattle Title Trust Co. v. Roberge,* 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928); *Eubank v. Richmond,* 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156 (1912). Thus, despite the defendants' contentions, it is not clear that a neighboring landowner's property interests are too negligible to require the City to afford him a hearing to air his views advocating strict enforcement of a local noise ordinance before the City grants another property owner a permanent variance. *See Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 13, 98 S.Ct. 1554, 1562, 56 L.Ed.2d 30 (1978); *Eastlake,* 426 U.S. at 693, 96 S.Ct. at 2371 (Stevens, J., *dissenting* ).